Ritchie VAUGHAN, Plaintiff,

v.

HARTFORD CASUALTY INSURANCE COMPANY, Defendant.

No. 4:02–CV–936–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

July 29, 2003.

Misty M. Pratt and Donald A. Ferrill, Brown, Pruitt, Peterson & Wambsganss, Fort Worth, TX, for plaintiff.

Bryan Haynes, Locke, Liddell & Sapp, Dallas, TX, for defendant.

### MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Came on for consideration the motion of defendant, Hartford Casualty Insurance Company, ("Hartford") for summary judgment. The court, after having reviewed Hartford's motion, the response of plaintiff, Ritchie Vaughan, ("Vaughan") Hartford's reply, the record, and applicable authorities, concludes that Hartford's motion should be granted.

### I.

#### Background

Vaughan instituted this suit in the District Court of Tarrant County, Texas, 342nd Judicial District, on October 11, 2002. The action was removed to this court by notice of removal filed on November 18, 2002. Vaughan's state-court petition continues to be his active pleading. Hartford's active pleading is its first amended answer, filed on May 15, 2003.

Vaughan alleges in his state-court petition that: On July 8, 2000, he sustained severe and permanent injuries in a motor vehicle accident. The vehicle in which he was riding as a passenger was insured under an insurance policy that Hartford issued. Vaughan was a covered insured under the policy. He notified Hartford on October 12, 2000, and again on November 30, 2000, of the accident and his injuries; and, he informed Hartford that he was making a claim under the insurance policy for uninsured motorist benefits. Hartford did not pay Vaughan's claim until April 10, 2002. In the handling of his claim, Hartford (1) engaged in unfair claims settlement practices in violation of article 21.21, § 4(10), Texas Insurance Code, and § 17.46(b), Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), (2) breached its common law duty of good faith and fair dealing, and (3) failed to comply with the prompt payment statute, article 21.55, Texas Insurance Code.

### II.

#### Hartford's Motion for Summary Judgment

Hartford contends in its motion that Vaughan's claims "were released by [Vaughan] as a result of his execution of the Full and Final Release Of All Claims," and are, thus, "barred in their entirety." Mot. at 2. Also, Hartford argues that because it "tendered the underinsured motorist benefits to [Vaughan] shortly after an agreement was reached with Hartford as to the amount of such benefits, Hartford did not violate any statute or breach any duty to [Vaughan]." *Id.* Finally, Hartford maintains that Vaughan can produce no evidence that he has suffered actual

damages sufficient to sustain certain of his claims. *Id.*

## III.

### *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus.* Co., *Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348.

## IV.

### *Undisputed Facts*

#### A. *The Accident That Started it All*

On July 8, 2000, Vaughan was a passenger in a Cadillac Escalade ("Escalade") driven by Jon McManus, which rolled over multiple times in a motor vehicle accident in North Richland Hills, Texas. Vaughan was injured when he was partially ejected from the Escalade. Br. to Resp. at 4; Mot. at 3. The driver of the other vehicle involved in the accident was Gene Smith ("Smith"). Br. to Resp. at 9. Smith's negligence caused the accident. He had liability insurance, but the coverage was limited to $20,000. App. to Mot. at 12.

#### B. *The Insurance Policy*

The Escalade was covered by an automobile liability insurance policy, policy number "46 UEC RT5860" ("Policy"), that plaintiff's employer, Pinnacle Reprographics, Inc., ("Pinnacle") purchased from Hartford. *Id.* at 16–34.[1]

---

1. Hartford included a copy of an insurance policy in the appendix to its motion for summary judgment. App. to Mot. at 16–34. Vaughan did not include a copy of any insurance policy in the appendix to his response.

The court proceeds on the assumption that the provisions of the copy of the policy contained in Hartford's appendix are the same as the policy on which Vaughan's claims are based. Nevertheless, the court makes a pair

The Policy contains coverage forms for various kinds of insurance coverage. At issue here is the "UNINSURED/UNDER-INSURED MOTORISTS INSURANCE" (hereinafter, "UM/UIM Coverage"). As a passenger of the insured vehicle, Vaughan was an insured under this coverage. The insuring obligation of Hartford relative to the UM/UIM Coverage was, generally stated, as follows:

> [Hartford] will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured, or property damages causes by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured vehicle.

*Id.* at 25. The term "uninsured motor vehicle" includes underinsured motor vehicles. *Id.* at 27. And, "[a]ny other person occupying a covered auto" is a covered insured. *Id.* at 26. UM/UIM Coverage in the amount of $1,000,000.00 for each accident was provided. *Id.* at 25.

C. *Vaughan's Claims for UM/UIM Coverage under the Policy*

Vaughan, through counsel, made a claim under the UM/UIM Coverage on November 30, 2000. App. to Resp. at 19. On January 11, 2001, David Clement ("Clement"), a Claim Service Consultant for Hart-ford, responded to the November 30 letter from Vaughan's counsel, and indicated that Hartford needed to obtain a recorded statement from Vaughan, as well as certain medical documentation to complete a medical evaluation of Vaughan's injury claim. *Id.* at 6–9. By letter dated March 8, 2001, Clement informed Vaughan's counsel that Hartford had "completed [its] asset check against Smith in connection with [Vaughan's] underinsured motorist claim," and gave Vaughan's counsel the following instructions:

> ... Please accept this letter as permission to settle with the underlying carrier, for the limits of their liability coverage.
>
> When you are prepared to settle your client's underinsured motorist exposure, please forward a complete, neatly compiled and legible settlement brochure with the following proofs:
>
> 1. A copy of the executed settlement release with the underlying carrier;
>
> 2. A copy of the underlying carrier settlement check; and
>
> 3. A copy of the underlying carrier declarations page, if not already submitted[.]
>
> Once we are in receipt of this, please call me so that we can discuss the resolution of your client's underinsured motorist claim with The Hartford....

*Id.* at 10–11. By letter dated April 2, 2001, Vaughan's counsel sent several documents to Clements in response to Clements' January 11 letter. *Id.* at 12–14.[2]

---

of observations. First, Vaughan's accident occurred on July 8, 2000, approximately three months before the appendix policy became effective. App. to Mot. at 16 (stating that the policy was effective from October 9, 2000, until October 9, 2001). Second, there are discrepancies between claims purportedly released under the appendix policy, *see, e.g.,* App. to Mot. at 47–50 ("Full and Final Release of All Claims"), and the policy numbers under which Vaughan has purported to make claims, *see, e.g.,* App. to Mot. at 35 & 46 (letters referring to policy "# 46UECRT3288"). The court notes with regard to this second observation that Vaughan, in his state court petition, refers to an insurance policy issued by Hartford numbered "46UECRT3288 or 46UECRT5860." Pet at 2. Vaughan apparently has abandoned any claim he might have under policy number 46UECRT3288.

**2.** Vaughan's counsel indicates in his letter that he was enclosing seven different documents, as well as five other categories of information requested by Clements. App. to Resp. at 12–13. Also, he indicated he would provide photographs of Vaughan's scars in

Vaughan settled with Smith on either June 6 or June 21, 2001. App. to Resp. at 19; Br. to Resp. at 9.

By letter dated June 19, 2001, Vaughan's counsel responded to a June 7 letter from Clement:

> I am in receipt of your letter dated June 7, 2001, stating that "The Hartford is unable to either accept or reject [my] client's settlement demand" until you receive a complete copy of my client's medical records, medical bills, and a copy of his personal auto policy. While we have voluntarily provided The Hartford with the majority of this information, as well as provided The Hartford with a medical authorization, The Hartford has already waived its right to request any documentation.
>
> . . . .
>
> This will be my final demand for the policy limit under the above-referenced policy before I file suit. . . . Unless the total sum of $825,000.00 is tendered within sixty (60) days, I will recommend that Mr. Vaughan file suit against The Hartford for its bad faith handling of his claim. . . .

App. to Mot. at 35–36. Hartford first extended Vaughan an offer to settle his UM/UIM claim on January 10, 2002. Ferrill Aff. at 2; App. to Resp. at 4.

### D. The Release [3]

On or about March 21, 2002, Vaughan reached an agreement with Hartford to settle his UM/UIM claim for $200,000.00, and Clement sent Vaughan's counsel an unexecuted "FULL AND FINAL RELEASE OF ALL CLAIMS" ("Release"). Clement Aff. at 2; App. to Mot. at 14, 37–

40. On or about April 2, 2002, Clement received a copy of the Release signed by Vaughan; but, Vaughan and/or his attorney had inserted the following language in the Release:

> Notwithstanding anything to the contrary written above, Ritchie A. Vaughan does not release, acquit or discharge any claims he may have against Hartford Casualty Insurance Company, The Hartford Insurance Company and Financial Services Group, Inc., their employees, representatives, agents, assigns, successors, parent companies, subsidiary companies and all underwriters at interest from any claims Ritchie A. Vaughan may have for breach of the duty of good faith and fair dealing, violation of any provisions of Texas Insurance Code Article 21.21, violation of any provisions of Texas Insurance Code Article 21.55, violation of any regulations promulgated by the Texas Department of Insurance or violation of the Texas Deceptive Trade Practices—Consumer Protection Act, which are collectively referred to herein as the "Reserved Claims." Further, Ritchie A. Vaughan will not indemnify or hold harmless any of the parties released herein from any of the Reserved Claims. Ritchie A. Vaughan reserves unto himself all of the Reserved Claims.

Clement Aff. at 2–3; App. to Mot. at 14–15, 41–44. Clement wrote "VOID" on each page of the altered Release, and sent the original Release back to Vaughan with an explanation that "[t]hese releases have been modified with unauthorized changes so I'm sending them back to your office voided," and that, "[p]er our agreement

---

the near future, and requested (for apparently the second time) a copy of the applicable insurance policy, including the declarations page. Id. at 13–14. None of the documents or information alluded to in the letter appears with the letter, or elsewhere in the appendix to Vaughan's response.

3. Hartford does not dispute its insuring obligation, or assert any exclusion, relative to the UM/UIM Coverage. See Hartford's 1st Am. Answer ¶ 4. Rather, Hartford maintains that Vaughan released his claims by signing the Release.

the settlement of this matter is the settlement of any and all claims for the amount of $200,000.00." Clement Aff. at 2–3; App. to Mot. at 14–15, 41–44, 45.

On April 4, 2002, Vaughan signed the Release. App. to Mot. at 46–50. Potentially pertinent portions of the Release are:

I, Ritchie A. Vaughan, hereby make a claim under the Uninsured/Underinsured Motorist Coverage carried by Pinnacle ... The Uninsured/Underinsured Motorist coverage afforded in this matter is under policy number 46 UEC RT5860 with Hartford ... I, Ritchie Vaughan, in consideration of the sum of Two Hundred Thousand Dollars and No/100 ($200,000.00) to be paid by The Hartford, have **RELEASED, ACQUITTED** and **FOREVER DISCHARGED** *Pinnacle Reprographics, Inc. and Hartford Casualty Insurance Company,* and by these presents do for myself, my heirs, successors, administrators, executors, legal representatives and assigns, **RELEASE, ACQUIT** and **FOREVER DISCHARGE** *Pinnacle Reprographics, Inc. and Hartford Casualty Insurance Company* and all of their employees, representatives, agents and assigns, and **RELEASE, ACQUIT** and **FOREVER DISCHARGE** THE HARTFORD INSURANCE COMPANY AND FINANCIAL SERVICES GROUP, INC., their employees, representatives, successors, agents, assigns, parent and subsidiary companies, and all underwriters at interest, from any and all claims, demands and causes of action, of whatsoever nature, whether in contract or in tort, for bodily injury and property damage which have accrued or may ever accrue to me, Ritchie A. Vaughan, my heirs, executors, administrators, legal representatives and assigns, for and on account of the incident/auto accident which occurred on or about July 8, 2000, involving the following vehicle 2000 Cadillac Escalade—1GYEK13R4YR115606.

The consideration hereinabove mentioned is accepted by me in full compromise and settlement of all claims and causes of action being asserted by me or which might have been asserted by me, whether for property damages, personal injury or other loss or damage, and said claim shall be dismissed with prejudice. I hereby acknowledge full satisfaction and discharge of all claims and demands against the said company under the Uninsured/Underinsured Motorist Endorsement attached to policy number 46 UEC RT5860 issued to the Pinnacle Reprographics, Inc.

*Id.* Vaughan admitted in his responses to Hartford's requests for admissions that: "[he] settled [his] claim with Hartford for Uninsured/Underinsured motorist benefits under the Hartford Policy as a result of the accident in question"; "[h]e released all claims [he] had against Hartford for Uninsured/Underinsured motorist benefits under the Hartford Policy as a result of the accident in question"; "Hartford paid [him] $200,000"; and, "[he] accepted $200,000 from Hartford." App. to Mot. at 9–10.

## V.

### *Analysis*

A. *Whether Vaughan's Claims Were Released*

"A release is a writing which provides that a duty or obligation owed to one party to the release is discharged immediately on the occurrence of a condition." *Baty v. Protech Ins. Agency,* 63 S.W.3d 841, 848 (Tex.App.—Houston [14th Dist.] 2001, pet. denied). Releases are subject to the rules of construction governing contracts, meaning that:

[C]ourts must give effect to the true intentions of the parties as expressed in the written instrument.... The contract must be read as a whole, rather than by

isolating a certain phrase, sentence or section of the agreement. . . . The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent.

*Id.* at 848 (internal citations omitted). The Texas Supreme Court has held that a release must "mention" the claim to be released, and that "[e]ven if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged." *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex.1991). While general categorical release clauses should be narrowly construed, *see id., Brady* does not forbid a broad-form release, and "does not require that the parties anticipate and identify each potential cause of action relating to the release's subject matter," *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.,* 20 S.W.3d 692, 698 (Tex.2000).

The summary judgment evidence makes clear that the Release bars any claim against Hartford related to recovery pursuant to the UM/UIM Coverage. Language from the Release provides that Vaughan, in exchange for Hartford's payment of $200,000.00 to him, released Hartford "from any and all claims, demands and causes of action, of whatsoever nature, whether in contract or in tort, for bodily injury and property damage which have accrued or may ever accrue to me . . . *for and on account of the incident/auto accident which occurred on or about July 8, 2000, involving the [Escalade].*" App. to Mot. at 47–48 (emphasis added). The Release further states that the consideration "is accepted by [Vaughan] in full compromise and settlement of all claims and causes of action being asserted by me or which might have been asserted by me, whether for property damages, personal injury or other loss or damage, and said claim shall be dismissed with prejudice," and that Vaughan "acknowledge[s] *full satisfaction and discharge of all claims*

*and demands against [Hartford] under the [UM/UIM Coverage] attached to [the Policy].*" *Id.* at 48 (emphasis added).

To support its position that the Release subsumed the claims Vaughan is making in the instant action, Hartford directs the court's attention to the undisputed circumstances surrounding Vaughan's signing of the Release: (1) Vaughan, through counsel, threatened the types of claims that are the subject of this action as early as June 2001, *id.* at 35–36; (2) the alterations Vaughan made to the Release were an attempt to carve such claims from the scope of the Release, *id.* at 41–44; (3) Clement explained in a letter directed to Vaughan's counsel dated April 2, 2002, that the altered Release had been voided because of Vaughan's unauthorized changes, *id.* at 45; (4) Clement then reiterated that "[p]er our agreement the settlement of this matter is the settlement of any and all claims for the amount of $200,000.00," *id.;* (5) on April 4, 2002, Vaughan signed the Release (without any changes), *id.* at 47–50; (6) Vaughan's counsel returned the signed Release to Clement without expressing any disagreement as to Clement's statement that any and all claims had been settled, *id.* at 46; (7) Hartford paid Vaughan's claim on April 10, 2002, only three business days after Vaughan signed the Release, Br. to Resp. at 9; and (8) consistent with the Release, Vaughan accepted $200,000.00 from Hartford, App. to Mot. at 10.

One deduction that can be made from those circumstances is that the claims Vaughan attempted to remove from the scope of the Release were, in fact, intended to be covered by the Release. However, another is that Vaughan did not insist on the inclusion of additional language in the Release because, he thought, it went without saying that the Release would not subsume those claims since the Release

only discharged his UM/UIM claims under the Policy, and did not mention his other claims. The court has decided that it does not need to entertain either deduction in order to rule on Hartford's motion.

■ Bearing in mind that Vaughan's common-law claim that Hartford breached its duty of good faith and fair dealing is a tort claim that is separate and independent of the contract claim arising from the insurance policy, the court is not persuaded that the Release language is broad enough to embrace the common-law claim. The duty on the part of an insurer to deal fairly and in good faith with its insureds does not emanate from the terms of the insurance contract, but from an obligation imposed in law as a result of a special relationship between the parties governed or created by a contract. *See, e.g., Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996); *Viles v. Sec. Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990); *Bastian v. Travelers Ins. Co.,* 784 F.Supp. 1253, 1255–56 (N.D.Tex.1992). Though, under normal circumstances, an insured may not prevail on the common-law tort claim without first showing that the insurer breached the policy contract, *Akin,* 927 S.W.2d at 629, because of the independence of the tort cause of action from the insurance contract claim, there are circumstances when an insured can succeed on a tort claim against the insurance company even though unsuccessful on a claim under the insurance policy. For the reasons stated, the court is not ruling that the tort claim was discharged by the Release. The court reaches the same result as to Vaughan's claims against Hartford under the DTPA. But, an entirely different picture is presented by Vaughan's claim under article 21.55, Texas Insurance Code. That claim is based on a statutory provision that is intimately related to Hartford's obligations to perform under the insurance contract, and the relief provided by article 21.55 is predicated on a successful claim under the contract.

The obligations imposed on an insurance company under article 21.55 are of the kind that are deemed by law to become a part of the contractual obligations assumed by an insurance company when it issues a policy subject to the statute. *See, e.g., Nat'l Mut. Cas. Co. v. Lowery,* 136 Tex. 188, 148 S.W.2d 1089, 1091–92 (1940).

Article 21.55 very specifically defines steps that must be taken by an insurance company in the processing of a claim made under an insurance policy; and, the provisions of the statute have exactly the same effect as provisions of the policy contract. The statute defines the obligations of an insurer under a policy contract and extends the rights of an insured under the contract. Notably, applicability of the statute is limited to "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." TEX. INS. CODE art. 21.55, § 1(3) (Vernon Supp.2003). Thus, the article 21.55 claim is clearly within the scope of the Release, which, as previously noted, recites that the consideration given for the Release was in "full satisfaction and discharge of all claims and demands against [Hartford] under the [UM/UIM Coverage] attached to [the Policy]." App. to Mot. at 48. Therefore, the court concludes that Vaughan's article 21.55 claims were discharged by the Release.

The outcome of Hartford's contention that the Release discharged Vaughan's claims under article 21.21, § 4(10), Texas Insurance Code, is not quite so clear. One might reasonably argue that this claim should be treated the same as the article 21.55 claim. On the other hand, there might be basis for argument that the article 21.21, § 4(10) claim is more akin to the breach of good of good faith and fair deal-

ing claim. Because of the conclusion the court reaches in the next section of this memorandum opinion and order that there is no summary judgment evidence of damages, the court is not reaching a decision on the effect of the Release on the article 21.21, § 4(10) claim.

B. *Whether Vaughan Has Been Damaged by Hartford*

Hartford contends there is "no evidence that [Vaughan] incurred any economic damages beyond those recoverable under the policy in question, which have been compensated and released, nor compensable mental anguish as a result of Hartford's alleged delay in paying the UM claim." Mot. at 12.

■ Actual damages are a required element of claims under article 21.21, Texas Insurance Code, and the DTPA. *See, e.g.,* TEX. INS. CODE ANN. art. 21.21, § 16(a) (Vernon 1981 & Supp.2003); TEX. BUS. & COM. CODE ANN. § 17.50(a) (Vernon 2002); *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 385 (Tex.2000) (listing as an element in an article 21.21 action that a plaintiff sustain "actual damages caused by another's engaging in an act or practice declared unfair or deceptive"); *Doe v. Boys Clubs,* 907 S.W.2d 472, 478 (Tex.1995) (explaining that an element of a DTPA action is that a false, misleading, or deceptive act "constituted a producing cause of the consumer's damages"). And, actual damages are an element of a claim for breach of the duty of good faith and fair dealing. *See, e.g., Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 215 (Tex.1988).

There is no summary judgment evidence that Vaughan suffered any actual damages beyond those damages that were released by virtue of the Release. Nor has Vaughan presented any evidence that he has suffered mental anguish as a result of Hartford's handling of his claim. Vaughan responds that he has been damaged as a matter of law due to Hartford's unfair claims settlement practices. *See* Br. to Resp. at 11 (citing *Vail v. Tex. Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 136 (Tex.1988)). The court disagrees.

■ In *Vail,* the Texas Supreme Court held that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Vail,* 754 S.W.2d at 136. Here, Hartford did not refuse to pay Vaughan's claim. To the contrary, it is undisputed that Hartford and Vaughan reached a settlement on Vaughan's UM/UIM claim, and that by way of the Release, Hartford paid Vaughan $200,000.00 in exchange for Vaughan's release of any and all claims relating to his UM/UIM claim. Vaughan cannot now argue that he is entitled to more than that amount by presenting evidence of his medical bills relating to the accident and tax returns to substantiate his claim of lost wages. *See* Resp. at 11. Those damages were discharged under the Release. And, Vaughan's claim to the contrary is inconsistent with his own argument that the Release extinguished his claims under the Policy relating to the accident, but not his extra-contractual claims against Hartford for its handling of his UM/UIM claim. *See id.* at 7–8.

Vaughan has simply presented no summary judgment evidence linking Hartford's alleged improper handling of his claim to any amount of actual damages that he may have suffered. Accordingly, the court concludes that Vaughan's causes of action under article 21.21, Texas Insurance Code, the DTPA, and for breach of the duty of good faith and fair dealing should be dismissed.

## VI.

### *ORDER*

For the reasons discussed,

The court ORDERS that Hartford's motion for summary judgment be, and is hereby, granted.

The court FURTHER ORDERS that all Vaughan's claims against Hartford be, and are hereby, dismissed.

### FINAL JUDGMENT

For the reasons stated in the memorandum opinion and order signed by the court on the date of the signing of this final judgment,

The court ORDERS, ADJUDGES, and DECREES that plaintiff, Ritchie Vaughan, take nothing against defendant, Hartford Casualty Insurance Company, and that all claims of plaintiff against defendant be, and are hereby, dismissed.

The court further ORDERS, ADJUDGES, and DECREES that defendant recover from plaintiff all costs of court incurred by defendant in this action.