AMERISTAR JET CHARTER, INC.,
and Sierra American Corporation,
Appellant–Respondent,

v.

DODSON INTERNATIONAL PARTS,
INC., Respondent–Appellant,

Houston Casualty Company,
Respondent,

Howe Associates, Inc., Defendant.

No. SC 85889.

Supreme Court of Missouri,
En Banc.

Jan. 25, 2005.

Rehearing Denied March 1, 2005.

Christopher S. Shank, David L. Heinemann, Yvonne M. Warlen, Kansas City, Richard A. Illmer, Dallas, TX, for Appellant–Respondent.

Donald G. Scott, Kansas City, for Respondent–Appellant.

Martin M. Montemore, Patrick J. Kaine, Kansas City, Mark Cohen, Houston, TX, for Respondent.

MARY R. RUSSELL, Judge.

Ameristar Jet Charter, Inc. and Sierra American Corporation (collectively "Owner") brought a negligence suit against Dodson International Parts, Inc. ("Haul-

er") for its mishandling of Owner's airplane that was damaged after an emergency landing. The jury found in favor of Owner, and Hauler appeals the trial court's entry of judgment in accordance with the jury verdict. After opinion by the Court of Appeals, Western District,[1] this Court granted transfer. Mo. CONST. art. V, sec. 10.

Hauler raises eight issues on appeal, including that Owner presented insufficient evidence of lost profits damages. This Court reverses the trial court's judgment as to the calculation of lost profits damages. The trial court's judgment with respect to Hauler's remaining issues is affirmed. Owner also appeals, alleging that the trial court incorrectly calculated Owner's award against Hauler. This Court reverses the trial court's judgment as to the damages award calculation. The case is remanded for a new trial on the issue of damages or other relief consistent with this opinion.

Owner also asserted claims against its insurance carrier, Houston Casualty Corporation ("Insurer"), for negligent misrepresentation, negligence, and bad faith. The trial court granted Insurer's motion for summary judgment. Owner appeals, alleging that the trial court improperly granted judgment for Insurer based on a release contained in the proof of loss signed by Owner. This Court affirms the trial court's judgment in favor of Insurer.

## I. Facts

Ameristar and Sierra are in the air charter business. Sierra owns several jet airplanes, including the airplane that is the subject of this suit. Sierra leases these airplanes to Ameristar, which uses them to deliver parts for automobile manufacturers.

One of Owner's planes, a Falcon 20 Jet, made an emergency landing in April 1998 on a levee near the Kansas City Downtown Airport. Insurer's claims adjuster, Howe Associates, Inc. ("Adjuster"), hired Hauler to transport the airplane from the levee to the Kansas City Downtown Airport. In order to transport the airplane, Hauler removed the wings from the airplane and hauled the airplane's fuselage on a flat-bed trailer.

After Insurer ultimately concluded that the fuselage was bent and the repair cost would be prohibitively high, Insurer submitted a proof of loss to Owner, which proposed to treat the airplane as a constructive total loss and obligated Insurer to pay the policy limits of $1.5 million. Although Owner contends that Insurer gave it no choice in the matter, Owner signed the proof of loss and accepted payment of the policy limits.

The airplane was later sold at a salvage auction, in which Hauler outbid Owner and purchased the airplane from Insurer. It was discovered that Insurer was incorrect in its determination that the airplane's fuselage was permanently bent because the fuselage "popped" back into place after being removed from the flat-bed trailer. Hauler repaired the airplane for approximately $100,000, and offered to sell it to Owner for $1.5 million. Owner refused and purchased a replacement airplane for approximately $2.1 million.

Owner asserted a negligence claim against Hauler for its mishandling of the airplane. The trial court submitted this claim to the jury on comparative fault instructions. The jury found in favor of Owner, assigning 70% of the fault to Hauler and 30% of the fault to Owner. The

1. Parts of this opinion are taken without further attribution from the court of appeals opinion authored by the Honorable Thomas H. Newton.

jury also found Owner's actual damages to be $2.1 million. Based upon the jury's findings, the trial court entered judgment in favor of Owner for $1,435,000.

## II. Hauler's Claims

### A. Owner Presented Insufficient Evidence of Lost Profits.

Hauler argues that Owner did not provide sufficient evidence of lost profits in that Owner failed in calculating its net profit to deduct a variety of fixed and variable expenses, including salaries, benefits, insurance, depreciation, rent, interest, and other costs attributable to generating revenue with this aircraft.

Owner's primary evidence regarding its claimed lost profits damages was a chart summarizing the revenue and expenses of its business. Owner's president testified as to the methodology used to produce the calculations in the summary chart. The chart contained estimated lost profits from after the incident in April 1998 to August 1999. Based on the average revenue of all of the airplanes in its fleet, Owner calculated an estimate of the lost gross revenue for the damaged airplane.

Owner determined what the variable expenses were and subtracted this figure from the gross revenue to obtain profit. The variable expenses that Owner deducted were expenses for fuel and maintenance of its fleet. Owner's estimate of its lost profits damages for this airplane from April 1998 to August 1999 was $2,562,088.94. The jury returned a verdict finding Owner's total damages to be $2.1 million. After deducting the settlement amounts and the comparative fault allocated to Owner, the trial court found the total amount of Owner's damages to be $1,435,000.[2]

### 1. General Principles

The goal of awarding damages is to compensate a party for a legally recognized loss. *De Salme v. Union Elec. Light & Power Co.*, 232 Mo.App. 245, 102 S.W.2d 779, 782 (1937); *see also Sampson v. Mo. Pac. R. Co.*, 560 S.W.2d 573, 588 (Mo. banc 1978) (stating that the ultimate test for damages is whether the award will fairly and reasonably compensate the party for its injuries); DAN B. DOBBS, LAW OF REMEDIES § 3.1, at 210 (2d ed.1993). A party should be fully compensated for its loss, but not recover a windfall. *Weeks–Maxwell Constr. Co. v. Belger Cartage Serv., Inc.*, 409 S.W.2d 792, 796 (Mo.App. 1966); DOBBS, § 3.1, at 210. In many contract and tort cases involving damage to persons, property or businesses, a party requests damages for loss of business profits. "In evaluating the sufficiency of evidence to sustain awards of damages for loss of business profits the appellate courts of this state have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards." *Coonis v. Rogers*, 429 S.W.2d 709, 713–14 (Mo.1968).

For an award of lost profits damages, a party must produce evidence that provides an adequate basis for estimating the lost profits with reasonable certainty. *Meridian Enters. Corp. v. KCBS, Inc.*, 910 S.W.2d 329, 331 (Mo.App.1995). "Loss of profits refers to the amount of net profits a plaintiff would have realized if its clients had not been lost as a result of a defendant's actions." *Id.* While an estimate of

2. There is nothing in the record that reflects how much of the damages award is for lost profits damages. Hauler argues that no more than $210,000 of the judgment could represent claimed lost market value of the airplane and that the remaining amount represents lost profits damages.

prospective or anticipated profits must rest upon more than mere speculation, "[u]ncertainty as to the amount of profits that would have been made does not prevent a recovery." *Gasser v. John Knox Village*, 761 S.W.2d 728, 734 (Mo.App. 1988). The claimant must establish the fact of damages with reasonable certainty, but it is not always possible to establish the amount of damages with the same degree of certainty.

In some cases, the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred, but at the same time it is apparent that the loss is of a character which defies exact proof. In that situation, it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the court or jury. This principle is applicable in the case of proof of lost profits.

*Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.*, 690 S.W.2d 437, 444–45 (Mo. App.1985) (internal citations omitted).

### 2. Fixed and Variable Expenses

Hauler argues that Owner failed to deduct certain fixed and variable expenses in calculating its lost profits damages.

 Missouri courts agree that lost profits are recoverable in a variety of breach of contract, tort, and business interruption cases. *See Coonis*, 429 S.W.2d at 714; *Meridian*, 910 S.W.2d at 332. In general, in calculating lost profits damages, lost revenue is estimated, and overhead expenses tied to the production of that income are deducted from the estimated lost revenue. *Id.* Overhead expenses include both fixed and variable expenses. *Universal Power Sys., Inc. v. Godfather's Pizza, Inc.*, 818 F.2d 667, 673 (8th Cir.1987) (applying Missouri law). Fixed expenses are the continuous ex-

penses of the business that are incurred regardless of the loss of a portion of the business, for example rent, taxes, and administrative salaries. *Id.*; H. Kent Munson, *Fixed Overhead Expenses: Gremlins of Lost Profits Damages*, 56 J. Mo. B. 104 (March–April 2000). Variable expenses, also called direct expenses, are costs directly linked to the volume of business. *Universal Power Sys.*, 818 F.2d at 673.

The Missouri appellate cases are split on whether fixed expenses should be deducted from estimated lost revenues in the calculation of lost profits damages. This Court granted transfer of this case to resolve this conflict.

The *Meridian* case illustrates one approach. In *Meridian*, a travel agency claimed lost profits damages because the defendant wrongfully deprived it of the business of handling a 1990 trip to Hawaii. *Meridian*, 910 S.W.2d at 330–31. The court affirmed the trial court's grant of a directed verdict in favor of the defendants because the plaintiff failed to present evidence regarding its overhead expenses to support its claim for lost profits damages. *Id.* at 329. The court required the plaintiff to deduct both fixed and variable expenses in calculating lost profits. *Id.* at 332. In explaining its holding, the court stated that "[t]he cost and expense of operation is a considerable item and in an action for loss of profits is an essential item in the proof of damages." *Id.* (citing *Coonis*, 429 S.W.2d at 714). The court further explained that "[a]lthough 'it is not necessary to show the income and expenses of the entire business where only a portion thereof has been lost, it is still necessary to offset the expenses attributable to that portion from the revenues derived from such portion in order to reach a net profit amount which can be recovered in damages.'" *Id.* (quoting *All Star Amusement*,

*Inc. v. Jones,* 727 S.W.2d 930, 932 (Mo. App.1987)).

In another case, *Skinner v. Thomas,* 982 S.W.2d 698 (Mo.App.1998), the court required evidence of all overhead expenses. In *Skinner,* the plaintiff restaurant owners brought a breach of contract action against the defendant co-owner for failing to share business profits. *Id.* at 698–99. The court held that "a plaintiff fails to make a submissible case of damages if plaintiff does not introduce evidence of overhead expenses such as mortgage or rent, utilities, and salaries attributable to the business producing the income [and that] plaintiff's failure to produce evidence of overhead expenses prevents them from making a submissible case." *Id.* at 700.

Other Missouri appellate cases have held that fixed expenses should not be deducted in the calculation of lost profits damages. In *Forney,* the plaintiff subcontractor sought lost profits damages in a breach of contract suit against the defendant contractor after the contractor prevented it from performing its work under the construction contract. *Forney v. Mo. Bridge & Concrete, Inc.,* 112 S.W.3d 471, 473 (Mo.App.2003). The court held that only variable expenses, those expenses associated directly with the contract at issue and actually incurred, should be deducted from estimated lost revenues to determine lost profits damages. *Id.* at 474–45. The court explained that "[o]verhead expenses are included in the contractor's total cost saved by nonperformance and, thus, deducted from the contract price only where the owner/defendant proves that such expenses were actually saved by the breach." *Id.* at 474.

In *MFA Coop. Ass'n No. 86 v. Stone,* 971 S.W.2d 885, 886–87 (Mo.App.1998), the defendant milk producers alleged that certain ingredients found in the feed they purchased from the plaintiff farm supply dealer caused their cattle to produce less milk, which resulted in decreased milk sales. The court discussed the deduction of overhead expenses and affirmed a jury verdict for lost profits damages without evidence of the deduction of any overhead expenses. *Id.* at 889–93. In its attempt to distinguish *MFA* from *Coonis* and *Meridian,* the court stated:

> Nothing in the record suggests Defendants' operating costs during the period in dispute would have been higher had the herd produced the customary amount of milk. Said another way, there was no evidence that it would have cost Defendants any more to produce the "lost milk" plus the actual milk than it did to produce the actual milk alone. Consequently, the jurors could have reasonably concluded that the profits Defendants lost could be readily ascertained from the evidence adduced at trial.

*Id.* at 890.

This Court holds that in tort actions, variable expenses, not fixed expenses, should be deducted from estimated lost revenues in the calculation of lost profits damages. These variable expenses are expenses that are tied directly to the unit of business or property damaged as a result of the defendant's actions. These variable expenses may include expenses for fuel, maintenance, depreciation, interest, insurance, salaries and benefits for particular employees and rental of storage space so long as the party claiming lost profits damages can produce evidence of the estimated lost revenue of the unit of business or property damaged and all ascertainable variable expenses directly tied to it.

Hauler argues that the following overhead costs should be deducted from lost profits damages: salaries and benefits and training for the pilot and co-pilot to fly

the airplane; hangar rental for parking of the airplane; advertising; telephone; salaries and benefits for filing, accounting, clerical and administrative staff involved in scheduling cargo shipments and billing and collecting related revenue; the expense of office space, furniture and equipment used in generating revenues; and depreciation of such capital assets used in generating revenues and interest expense. Owner's president testified that these costs were fixed expenses and should not have been deducted from its estimated lost revenue to determine its lost profits damages. Owner's evidence was that it would have incurred these expenses in the operation of its business, regardless of its loss of the use of this airplane in its fleet. Although this Court finds these expenses to be fixed under the facts of this case, under different factual scenarios these overhead costs could be variable expenses that should be deducted from estimated lost revenues to determine lost profits damages.

Hauler also argues that Owner failed to produce evidence or failed to deduct all variable expenses associated with the loss of operation of the damaged airplane. The only variable expenses Owner deducted from its estimate of lost revenue were the expenses for fuel and maintenance of the airplane. Specific variable expenses of which Owner should have produced evidence and deducted from its estimated lost revenue are those expenses that are ascertainable and directly related to the operation of this airplane. Hauler specifically complains about the following expenses: depreciation on the airplane; debt service or interest on financing the airplane; and premiums for hull insurance and liability insurance on the airplane. Although Owner's president provided limited testimony about these expenses, the record is insufficient for this Court to determine what these expenses were and if they are fixed expenses that are not to be deducted, or

are variable expenses that should be deducted from estimated lost revenues in the calculation of lost profits damages.

Therefore, this Court reverses the judgment in part and remands the case for a new trial on the issue of damages or other relief consistent with this opinion.

## B. Hauler Cannot Challenge Owner's Standing to Maintain its Claims Against Hauler.

 Hauler argues that Owner lacked standing to maintain claims against it because Owner signed a proof of loss assigning the entire cause of action to Insurer. The assignment clause in the proof of loss stated:

> Now, therefore, in consideration of aforesaid payment, I/we hereby assign, transfer and subrogate to the said Insurance Company, all right, interest, or things in action against any person or corporation, who may be liable or hereafter adjudged liable for this loss, and I/we empower the said Insurance Company to sue, compromise or settle in my/our name(s), to the extent of the money aforesaid.

Because Insurer, not Hauler, would have received the benefit of any assignment of the cause of action, Insurer is the aggrieved party for purposes of this issue. In general, a party seeking appeal must be aggrieved by the judgment. Section 512.020, RSMo 2000. A party is aggrieved "when the judgment operates prejudicially and directly on his personal or property rights or interests and such effect is immediate and not merely a possible remote consequence." *Shelter Mut. Ins. Co. v. Briggs*, 793 S.W.2d 862, 863 (Mo. banc 1990).

Here, Hauler's rights and interests were not affected by the trial court's ruling. Insurer, as the aggrieved party, has not

asserted any right of setoff, subrogation or otherwise, or attempted to bring an interpleader action as to whatever Owner may recover from Hauler at trial or on appeal. Hauler's claim is without merit.

### C. Hauler's Remaining Claims

As to the remaining claims raised by Hauler, this Court affirms the trial court's judgment pursuant to Rule 84.16.[3] Having examined these claims thoroughly and finding no error of law, an extended opinion on these claims would have no precedential value.

### III. Owner's Claims

### A. The Trial Court Properly Granted Insurer's Motion for Summary Judgment Based on a Release Contained in the Proof of Loss Owner Signed.

#### 1. Governing Law

 Owner and Insurer agree that the trial court correctly found that Texas substantive law governs whether the trial court properly granted Insurer's motion for summary judgment based on a release contained in the proof of loss Owner signed. In substantive matters, Missouri follows the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, section 188, in determining what law applies. *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 718 (Mo.App.1997). As to procedural matters, such as summary judgment standards, this Court applies Missouri procedural law. *Id.*

#### 2. Summary Judgment Standards

 Appeals from summary judgment are essentially reviewed de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is only proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04. The moving party's right to summary judgment differs depending on whether the moving party is a "claimant" or a "defending party." *ITT*, 854 S.W.2d at 381. A "claimant" is one who seeks "to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment." Rule 74.04(a). A "defending party" is one "against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought." Rule 74.04(b).

 Insurer's motion for summary judgment addressed only claims Owner asserted against it. Therefore, for purpose of summary judgment, Insurer was a "defending party." A "defending party" may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's ele-

---

**3.** The remaining issues raised by Hauler are: Owner's failure to produce evidence of income and expenses of its business for a reasonable prior period; Owner's failure to introduce the best evidence available of lost profits damages; error in refusing a contributory negligence instruction; error in deviation from MAI 32.29 in mitigation of damages instruction; no substantial evidence that Hauler damaged the aircraft, reduced its market value or caused Owner's claimed loss of profit; error in exclusion of Exhibit 85 and refusal to take judicial notice of FAA regulation's definition of maintenance; plain error in Owner's repeated argument improperly urging the jury to put themselves in Owner's position; and grossly excessive verdict indicates bias, passion or prejudice and remittitur is warranted because amount awarded for lost profits is without substantial evidence to support it.

ments; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense. *ITT,* 854 S.W.2d at 381.

### 3. The Release Does "Mention" Owner's Claims Against Insurer as Required by Texas Law.

Insurer relies on a release contained in the proof of loss Owner signed as an affirmative defense. The release stated:

> In consideration of such payment said Company is hereby discharged and forever released from any and all further claim, demand or liability whatsoever for said loss and damage, under the Policy herein referred to, repairs and/or replacements having been made to my entire satisfaction.

■ Under Texas law, "to release a claim, the releasing document must 'mention' it." *Memorial Medical Center of East Tex. v. Keszler,* 943 S.W.2d 433, 434 (Tex.1997). In *Keszler,* a doctor signed a release in settlement of his suit against a hospital for disciplinary action taken against him. *Id.* In the release, the doctor and the hospital agreed that the doctor would release all claims "related to [the doctor's] relationship with [the hospital]." *Id.* at 435. The Texas Supreme Court held that this release barred the doctor's later suit for fraud and negligence based on exposure to a toxic sterilizing agent the hospital used during his employment because those claims were related to his relationship with the hospital, and, therefore, "mentioned" in the release. *Id.*

■ In this case, the release signed by Owner stated that Insurer is "discharged and forever released from any and all further claim, demand or liability whatsoever for *said loss and damage,* under the Policy herein referred to, repairs and/or replacements having been made to my satisfac-

tion." (Emphasis added). In light of the trial court's grant of summary judgment finding no material facts in issue, the "said loss and damage" language in the release appears to refer to the loss of the airplane. All of Owner's claims related to the incident that damaged its airplane and were, therefore, "mentioned" in the release contained in the proof of loss signed by Owner. By executing the release and accepting the $1.5 million in settlement funds, Owner relinquished any claims against Insurer arising out of, related to, or involving the incident that damaged Owner's airplane, including the claims of negligence, negligent misrepresentation, and bad faith.

Owner argues that the release contained in the proof of loss signed by Owner was similar to the release in a Texas federal district court case, *Vaughan v. Hartford Casualty Ins. Co.,* 277 F.Supp.2d 682 (N.D.Tex.2003), in which the court held the release was not broad enough to cover the claims asserted. Regardless of the Texas federal district court's decision in *Vaughan,* the Texas Supreme Court is the ultimate authority on the interpretation and application of Texas law. *See* TEX. CONST. art. V, sec. 3. This Court must follow the Texas Supreme Court's holding in *Keszler* in finding that Owner's claims were "mentioned" in the release. Owner voluntarily released these claims against Insurer, and Insurer is entitled to judgment as a matter of law.

### B. The Trial Court Incorrectly Calculated Owner's Award Against Hauler.

■ Owner also argues that the trial court incorrectly applied a $50,000 credit, the settlement from Adjuster, when it calculated the damages due from Hauler. The trial court subtracted the Adjuster's settlement from the total jury award after

apportioning the damages between Owner and Hauler according to the jury verdict.

■ The proper method for calculating damages is first to deduct from the total damages the amount the plaintiff received from settling defendants and then to apportion the remaining damages between the plaintiff and non-settling defendants according to their respective percentages of fault. *Jensen v. ARA Servs., Inc.*, 736 S.W.2d 374 (Mo. banc 1987). In this case, the trial court erred in subtracting the Adjuster's settlement from the total jury award *after* apportioning the damages. As a result, Owner's recovery was reduced by $15,000. The judgment of the trial court finding Owner's award to be $1,435,000 is reversed, and the case is remanded.

## IV. Conclusion

The trial court's judgment is affirmed in part, and reversed and remanded in part for a new trial on the issue of damages or other relief consistent with this opinion.

WHITE, C.J., WOLFF, PRICE, TEITELMAN and LIMBAUGH, JJ., and BLACKMAR, Sr.J., concur.

STITH, J., not participating.