**BURNS NATIONAL LOCK INSTALLATION CO., INC., Plaintiff/Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant/Appellant.**

No. ED 78433.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 4, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Stephen D. Hoyne, Amelung, Wulff & Willenbrock, St. Louis, MO, for Appellants.

John West Rourke, Reinert & Rourke, P.C., St, Louis, MO, for Respondent.

### Introduction

SULLIVAN, Presiding Judge.

American Family Mutual Insurance Co. (American Family) appeals from a trial court judgment entered in accordance with jury verdicts in an action brought by Burns National Lock Installation Co., Inc. (Burns) to recover under an insurance policy, for vexatious refusal to pay, for breach of an oral contract, and for negligent misrepresentation. We affirm in part and reverse in part.

### Factual and Procedural Background

Brad Burns (Brad) and Donald Burns (Donald) founded Burns in January 1990. Burns is a Missouri corporation that installs lock sets on doors. Burns's initial contact with American Family was in 1991 through Nancy Gianino (Gianino), an American Family agent. Gianino transferred Burns's file to Hayward Liebling (Liebling), also an American Family agent, shortly after her resignation sometime in 1991. In the spring or early summer of 1991, after Burns's file had been transferred to Liebling, Brad and Donald met with Liebling to discuss Burns's insurance coverage with American Family. Burns's first policy with American Family had a term of April 5, 1991 to April 5, 1992.

In November 1993, VingCard Systems, Inc. (VingCard), a company that sells and installs electronic lock sets for hotels, hired Burns for a project at a Travelodge in San Francisco. At the time, VingCard was number one in its field in the country and Burns was VingCard's number one installer. The Travelodge project required Burns to install lock sets owned by VingCard to about two hundred doors with existing locks already in place at the Travelodge.

During the lock installation process, which occurred over about two weeks, the doors were damaged by "overcuts" made by Burns's employees, and consequently the doors did not meet the applicable fire code. There was no damage to the locks that were installed. The project was completed on November 26, at which time Mark Johnson, Burns's crew leader for the Travelodge project, had the manager at the Travelodge sign a job installation sign-off sheet indicating that "everything was fine."

Subsequently, VingCard received a claim from the Travelodge for $41,000 to replace the doors. VingCard requested payment from Burns, and in January 1994, Burns made a claim against American Family, which American Family denied.

In March 1994, William Irwin (Irwin), Casualty Claim Analyst for American Family, sent a letter to VingCard and a copy to Burns, indicating American Family's denial of Burns's claim for the damage to the doors at the Travelodge.[1] The Date of Loss stated in the letter was November 15, 1993. The letter included the following:

---

1. In May 1994, Burns agreed to personally pay the claim to VingCard.

As stated in our business liability policy on page 1, #2 EXCLUSIONS: 'This insurance does not apply to:

k. Property damage to your work arising out of it or any part of it.

l. Property damage to your work arising out of it or any part of it and included in the products completed operation hazard.'

American Family Insurance considers the doors to be our insured's work product and therefore is excluded under the business liability policy we carry for them. The liability policy we carry only covers resulting damage that our insured causes, which is not a direct work product or work labor that our insured is performing.

For these reasons and all other reasons, we must deny any and all voluntary payments of this claim.

At the time of the Travelodge project, American Family insured Burns under a Business Key Policy (Policy) that included commercial general liability coverage. The commercial general liability coverage form included the following under the Coverages section:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

 . . . .

 b. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

. . . .

2. Exclusions.

 This insurance does not apply to:

 k. "Property damage" to "your product" arising out of it or any part of it.

 l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

The commercial general liability coverage form also included the following under the Definitions section:

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

 . . .

11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

 (1) Products that are still in your physical possession; or

 (2) Work that has not yet been completed or abandoned.

 b. "Your work" will be deemed completed at the earliest of the following times:

 (1) When all of the work called for in your contract has been completed.

 (2) . . . .

 (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

. . . .

12. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

. . . .

14. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

. . . .

15. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

b. The providing of or failure to provide warnings or instructions.

In January 1998, Burns filed a four-count Petition against American Family and Liebling. Count I sought damages for American Family's denial of coverage under the Policy, plus attorney's fees and costs, pre-judgment interest, and "damages for the loss of use of its funds plus damage to its business, its standing, its reputation, and its credit." Count II sought damages for vexatious refusal to pay. Count III sought damages for breach of oral contract. Count IV sought damages for negligent misrepresentation.

In May 2000, the matter was tried to a jury over a period of four days. The claims against Liebling were not submitted, were subsequently deemed abandoned by the trial court, and were dismissed with prejudice. The jury returned a verdict in favor of Burns for $41,000 on the Policy, plus $22,960 in interest, $4,250 in penalties, and $60,000 in attorney's fees as to Counts I and II (Verdict A); $1,200,000 on the breach of oral contract claim (Verdict B); and $0 on the negligent misrepresentation claim (Verdict C).

American Family filed the following motions: (1) Motion for a Directed Verdict at the Close of Plaintiff's Case; (2) Motion for a Directed Verdict at the Close of the Entire Case; (3) Motion for Judgment Notwithstanding the Verdicts; and (4) Motion for New Trial and Alternative Motion for Order of Remittitur. The trial court denied all of the motions and entered a judgment in accordance with the jury verdicts.

## Discussion

American Family raises seven points on appeal. We address its sixth point first, as it raises a preliminary issue significant to other points on appeal. In its sixth point on appeal, American Family argues that the trial court erred in (1) sustaining Burns's Motion to Strike and Exclude limiting American Family's evidence and argument to the language of exclusions "k" and "l" of the Policy based on arguments of waiver and estoppel, (2) sustaining motions to strike evidence offered by American Family to explain the denial of the claim on the basis of work product, and (3) refusing to give Instructions C, D, and E providing definitions for the exclusions, in that the original denial letter and the Second Amended Answer adequately notified Burns of the basis for denial based on work product exclusions, but these rulings prevented American Family from presenting its defense to the jury.

In March 2000, the trial court entered the following Order:

> It is ORDERED that Plaintiff's Motion to Strike and to Exclude Evidence Regarding Additional Policy Exclusions Which Were Neither Raised in Defendants' Coverage Denial Nor in Their Affirmative Defenses is hereby granted. All policy exclusions not previously raised by Defendants in their Affirmative Defenses are stricken, and Defendants are specifically forbidden from attempting to adduce evidence, ask any question, make any argument or statement or to introduce evidence regarding any policy exclusions or conditions other than exclusions "k" and "l" of the Policy.

Admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo. banc 2000). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Id.* at 604.

We find that the trial court's decision to sustain Burns's Motion to Strike and Exclude and motions to strike evidence offered by American Family to explain the denial of the claim on the basis of work product was not an abuse of discretion because American Family was estopped from bringing any defenses other than exclusions "k" and "l" of the Policy.[2]

The general rule is that an insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground. *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386 (Mo. banc 1989). The rule finds its roots in the doctrines of waiver and estoppel. *Id.* Estoppel, with some element of unfairness, lack of notice, or other detriment to the insured, is the preferred theory when the insurer elects a policy defense. *Id.* at 388. Estoppel requires (1) an admission, statement or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. *Id.* Thus, under an

---

**2.** Refused Instructions C, D, and E provided definitions for "products-completed operations hazard," "your work," and "work product" respectively, as defined under the Policy. The Policy was admitted into evidence.

Whether to submit a definitional instruction to the jury is within the sound discretion of the trial court. *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 144 (Mo.App. E.D. 1989). We find no abuse of discretion here.

estoppel theory, the insurer must first announce a specific defense and subsequently seek to rely instead on an inconsistent theory. *Id.*

The evidence supports application of the estoppel theory. First, the original denial letter, quoted above, announces a specific defense, namely, work product exclusions "k" and "l" of the Policy. Second, American Family's First Amended Answer to Plaintiff's First Set of Interrogatories to American Family, filed in September 1999, included the following:

> 10. State *any reasons* that American Family has for its denial of coverage under Policy Number 24X67247–01 for damage to the doors at the Travel lodge Fisherman's Wharf Motel in San Francisco, California in 1993. (emphasis added)
>
> ANSWER:
>
> Plaintiff's Commercial General Liability Policy Number 24X67247–01 specifically excludes under the section entitled "Exclusions" (which begins on page 1 of 7 thereof and finishes on page 2 of 7) the following:
>
> "2. Exclusions
>
> This insurance does not apply to:....
>
> k. "Property damage" to "your product" arising out of it or any part of it.
>
> l. "Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard."
>
> Plaintiff's claim falls under this exclusion and is not covered.

Third, paragraph three of Burns's Petition states: "The general liability coverage provided by American Family under the Policy is and was at all times applicable to Burns and in full force and effect." Paragraph four of Burns's Petition states:

"Burns paid the premium for the Policy and fulfilled all other conditions precedent for coverage under the Policy and for making claim under the Policy." In its Second Amended Answer, filed in October 1999, American Family admitted paragraphs three and four of the Petition. The Second Amended Answer also included the following:

> 3. For further answer and affirmative defense Defendants state that Plaintiff's claim is barred contractually by exclusions listed in Plaintiff's Commercial General Liability Policy Number 24–X67247–01 issued by Defendant American Family. Said exclusions are found in the section of said policy in the "Exclusions" section on page 2 of 7 (the "Exclusions" section begins on page 1 of 7). The pertinent portions read as follows:
>
> "2. Exclusions
>
> This insurance does not apply to:....
>
> k. "Property damage" to "your product" arising out of it or any part of it.
>
> l. "Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard." (Exhibit 2)
>
> These exclusions apply because the Plaintiff's claim involves its work product which is clearly excluded from coverage.

Thus, the Second Amended Answer served to admit coverage of the claim but for work product exclusions "k" and "l" of the Policy.

Fourth, American Family's First Request for Stipulations, prepared in January 2000, included the following stipulations:

> 8. Defendant American Family's denial of coverage of Plaintiff's claim is based upon Subsection 2 Exclusions k and l found on page 2 of 7 of the

Commercial General Liability Coverage Form, with the definitions of the terms "Your product" and "Your work" being found in paragraphs (14) and (15) of Section V—Definitions on page 7 of 7 thereof.

14. The March 4, 1994 letter, sent to Vingcard Systems, with a copy sent to Brad Burns/Burns National Lock Installation, sets out American Family's basis for denial of coverage.

Further, prejudice to Burns was beyond the mere trouble and expense of bringing suit. For at least two years after the filing of the Petition, American Family identified as its defense to Burns's claim the application of work product exclusions "k" and "l" of the Policy. Burns reasonably relied on the assertion of this specific defense by preparation to meet this issue at trial. *See Brown*, 776 S.W.2d at 389.

Accordingly, we find that the trial court did not abuse its discretion in sustaining Burns's Motion to Strike and Exclude limiting American Family's evidence and argument to the work product exclusions "k" and "l" of the Policy. American Family's point six on appeal is denied.

We now return to American Family's point one on appeal. In its first point, American Family argues that the trial court erred in overruling its Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict because the evidence showed that the liability claim against Burns did not fall within the coverage under the liability policy but rather the evidence showed that the claim fell within the policy exclusions in that: (1) Burns's liability for property damage did not arise out of an accident, but out of intended conduct, and (2) the liability for the property damage resulted from damage to Burns's work product, which was within Burns's excluded business risk.

As discussed in point six above, the trial court properly limited American Family to its initial specific defense, namely, work product exclusions "k" and "l" of the Policy. Thus, the occurrence issue as raised in American Family's point one was not an element of the case. Further, as illustrated by the evidence cited under our analysis of point six above, American Family did not deny coverage under the coverage granting part of the Policy. Rather, it argued that specific exclusions under the Policy applied to the claim that barred coverage. American Family first raised the occurrence issue as presented in its point one in its Cross–Motion for Summary Judgment, filed in April 2000, only days before the trial. American Family's initial specific defense was not stated in such a way as to reasonably imply this subsequent, inconsistent defense. *See Brown*, 776 S.W.2d at 389.

Similarly, American Family's initial specific defense was not stated in such a way as to reasonably imply that the "claim was being denied under all of the business risk exclusions," as American Family further argues. As illustrated by the evidence cited under our analysis of point six above, American Family made no reference to "business risk exclusions." Accordingly, the trial court did not err in overruling American Family's Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict as to Verdict A. American Family's point one on appeal is denied.

In its second point on appeal, American Family argues that the trial court erred in giving Instruction No. 8 and in refusing to give Instruction A because Instruction No. 8 failed to require findings on all essential elements in that it did not require the jury to find that the legal liability of Burns for property damage arose out of an occurrence, or accident, and therefore Burns

was relieved of the burden of proof and the risk of non-persuasion on this issue of fact and in effect a verdict was directed for Burns on this issue.

■■■■ We will only reverse on instructional error where the instruction misdirected, misled or confused the jury, and the instruction resulted in prejudicial error. *In re Estate of Schwartze*, 998 S.W.2d 596, 599 (Mo.App. E.D.1999). A jury instruction is prejudicial if it directs recovery on a different theory than that which was pleaded and proved. *Id.* In reviewing an instruction, we view the evidence and inferences in a light most favorable to the instruction and disregard contrary evidence. *Id.*

Rule 70.02(b)[3] provides in part that a Missouri Approved Instruction (MAI) that is "applicable in a particular case .... shall be given to the exclusion of any other instructions on the same subject. Where an MAI must be modified to fairly submit the issues in a particular case .... then such modifications .... shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts ."

Instruction No. 8, a modified version of MAI 31.09,[4] read as follows:

Your verdict must be for plaintiff if you believe:

First, defendant issued its policy to plaintiff agreeing to pay those sums that the insured becomes obligated to pay as damages because of "bodily injury" or "property damage," and

Second, plaintiff incurred such an obligation, and

Third, defendant refused to pay the sum that the plaintiff became obligated to pay, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 9.[5]

Refused Instruction A, also a modified version of MAI 31.09, read as follows:

Your verdict must be for plaintiff if you believe:

First, defendant issued its policy to plaintiff covering loss due to legal liability for property damage arising out of an occurrence, and

Second, plaintiff incurred such a legal liability arising out of an occurrence and gave timely notice to American Family to defend and indemnify Plaintiff against such legal liability, and

Third, Defendant American Family refused to defend and indemnify Plaintiff, and

Fourth, Plaintiff was thereby obligated to pay for such property damage, unless you believe Plaintiff is not entitled to recover by reason of Instruction Number.

---

**3.** All rule references are to Mo. R. Civ. P.2001, unless otherwise indicated.

**4.** MAI 31.09 states the following:
31.09 [1978 New] Verdict Directing—Insurance Policy on Property
Your verdict must be for plaintiff if you believe:
First, defendant issued its policy to plaintiff on (here describe property) covering loss due to (here describe applicable coverage, e.g., fire, collision, or windstorm), and
Second, such property was damaged by (here insert applicable coverage), and

Third, the policy was in force on the date of such loss.
* [unless you believe plaintiff is not entitled to recover by reason of Instruction Number (here insert number of affirmative defense instruction) ].
Notes on Use (1978 New)
* Add if affirmative defense is submitted. For example MAI 32.24.

**5.** Instruction No. 9, a modified version of MAI 32.24 submitted by American Family, stated exclusions "k" and "l" of the Policy.

In its refusal of Instruction A, the trial court stated that "the defense has not provided any sort of defense regarding the policy language relating to occurrence; and even if the defendant had, the Court believes that there was not sufficient evidence from which a jury could reasonably find that an occurrence—that this was not covered under the occurrence language of the policy."

It is not error for an instruction to assume uncontroverted facts. *Riberglass, Inc. v. Giesler,* 720 S.W.2d 37, 39 (Mo.App. E.D.1986). Only issues of fact that are genuinely in dispute need to be submitted to the jury, *Miller v. Gillespie,* 853 S.W.2d 342, 345 (Mo.App. E.D.1993), and a jury should not be required to find an element or fact not actually contested or in issue. *Huff v. Union Elec. Co.,* 598 S.W.2d 503, 515 (Mo.App. E.D.1980). As discussed in point one above, the occurrence issue was not an element of the case. Further, as illustrated by the evidence cited under our analysis of point six above, American Family did not deny coverage under the coverage granting part of the Policy. Rather, it argued that specific exclusions under the Policy applied to the claim that barred coverage. Additionally, during trial, Irwin testified that "[i]f all the exclusions in the policy didn't apply, there would have been coverage." Based on this evidence, we find that coverage was not an issue of fact that was genuinely in dispute, and therefore, it need not have been submitted to the jury.

Accordingly, we find MAI 31.09 to be applicable to this case and the modified version in Instruction No. 8 to meet the standard outlined in Rule 70.02(b). Thus, the trial court did not abuse its discretion in giving Instruction No. 8 and in refusing to give Instruction A. American Family's point two on appeal is denied.

In its third point on appeal, American Family argues that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict as to Verdict B because an inconsistency was created in that the jury, having found the Policy as written to govern the rights in returning Verdict A, could not also have found that the Policy was amended by oral modification or abandoned and replaced by an oral contract of insurance at the time the liability of Burns to VingCard was incurred.

The standard of review of a denial of a judgment notwithstanding the verdict is essentially the same as for review of a denial of a motion for directed verdict. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000). A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Id.* In determining whether the evidence was sufficient to support the jury's verdict, the evidence is viewed in the light most favorable to the verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict. *Id.* We will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Id.* The jury determines the credibility of the witnesses. *Id.* at 819. Further, a trial court may sustain a defendant's motion for directed verdict or a motion for judgment notwithstanding the verdict only when the facts in evidence and the reasonable inferences drawn therefrom are so strongly against a party that no room is left for reasonable minds to differ. *P.D.2000, L.L.C. v. First Fin. Planners, Inc.,* 998 S.W.2d 108, 110 (Mo.App. E.D.1999).

In its Order denying American Family's Motion for New Trial and Motion for

Judgment Notwithstanding the Verdict, the trial court found the following:

> The Court finds that neither the theories of recovery nor the remedies are inconsistent. American family assumes that the oral representations comprised a policy that is superseded by the plain terms of the written policy. However, Count III, as pleaded and submitted, is not an action on a policy but a claim for breach of an agreement whereby Liebling stated that American Family would cover loss arising from damage done in the course of Plaintiff's work....
>
> Verdict B refers to damages arising from Liebling's promise regarding the coverage American Family would provide. It is not an action on a policy but an action based on Liebling's breach of his promise regarding coverage, made on behalf of American Family. Plaintiff's award of damages under Verdicts A and B are based on breaches of two agreements. The award of damages on these contracts are not inconsistent remedies for the same breach.

 The doctrine of election of inconsistent theories of recovery requires a party to elect between theories of recovery that are inconsistent, even though pled together as permitted by Rule 55.10, before submitting the case to the jury. *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 506–507 (Mo. banc 1993). If two counts are so inconsistent that the proof of one necessarily negates, repudiates, and disproves the other, it is error to submit the inconsistent theories. *Id.* at 507. The determination of when two theories are inconsistent is heavily dependent upon the facts of the case, although a common thread for inconsistent theories is if in all circumstances one theory disproved the other. *Id.* Thus, the theories must factually disprove each other to be inconsistent and to require election. *Id.*

Brad testified that in 1991, he, Donald, and Liebling met to discuss Burns's insurance coverage. In describing the conversation, Brad testified to the following:

> Donald specifically was scared of somebody messing up some doors, because it's very easy to take a jig and put it on upside down and not know it and get going so fast, because we want our guys to do thirty doors a day. You put it on there and you start drilling; and you get that upside down, those holes are wrong, that lock set will not cover them holes.
>
> And we specifically asked him, "If somebody accidentally drills something wrong on these doors, are we covered?" And he said yes.

Brad also testified that Donald did a demonstration for Liebling:

> The door there pulled in. But still he was pointing at the door like this. He had—he pretended like he had a jig in his hand. And he was familiar—[Liebling] was familiar with a jig, because we had showed it to him. So he was pretending like he had the jig in his hand, and he was pointing like this at the door. "If somebody cuts holes or drills wrong in this door, are we covered?" And he said yes.

When asked whether the type of damage that he just described was the type of damage that occurred at the Travelodge, Brad testified that it "was the same type of thing."

Donald testified that at the meeting with Liebling, they "specifically talked about the requirements that VingCard wanted for our policy. And then we had some additional questions concerning the doors, if we had certain problems with the doors, like accidentally cutting the doors wrong."

During direct examination of Donald, the following exchange occurred:

A. And then also we talked about the door, if we would damage not just a door but like a lot of doors, we had something wrong with the job. Because it had happened before with another company I worked for, and we wanted to make sure that we were covered in case we had to, you know, a scenario like this. Purchase—

Q. You're a little bit—what specifically was discussed about the door?

A. We said exactly, "If we drill holes in the bottom of the door that didn't belong, would that be covered to replace the doors?"

Q. All right. And what, if anything, did Mr. Liebling say?

A. He said that that would be covered.

Liebling testified that he did not recall either Brad or Donald asking him if an incorrect cut on a door or deliberate damage done by an employee to a door was covered under the Policy. He also did not recall a demonstration at the meeting.

Based on the facts of this case, we find that the theory under Count I and the theory under Count III are inconsistent. Count III alleged breach of an oral contract to provide insurance coverage for damage to doors. Thus, both the alleged oral contract and the Policy are insurance liability policies. There is no evidence that the coverage under the alleged oral contract differs from the coverage under the Policy. Under Verdict A, the jury found for Burns by concluding that coverage existed under the Policy and that Burns was entitled to coverage for the damage to the doors at the Travelodge. Having done so,

the jury could not also consistently find under Verdict B that American Family breached a contract to provide insurance coverage for damage to the doors because the jury already concluded under Verdict A that American Family provided coverage under the Policy. Thus, we find that the theory under Count I and the theory under Count III are inconsistent.

Because the theory under Count I and the theory under Count III are inconsistent, Burns could not submit both theories of recovery to the jury. Moreover, given the jury's determination under Verdict A that the Policy issued by American Family did, in fact, provide coverage, American Family, as a matter of law, could not have breached the alleged oral contract to provide coverage. Nor could American Family have misrepresented that there was coverage, as alleged under Count IV. Therefore, the trial court erred in denying American Family's Motion for Judgment Notwithstanding the Verdict as to Verdict B and Verdict C.

## Conclusion

Accordingly, the judgment of the trial court is affirmed as to Verdict A and reversed as to Verdict B and Verdict C.[6] Costs of appeal to be assessed against American Family.

CRAHAN and MOONEY, JJ., concur.

---

6. In view of our holding, we need not address American Family's remaining three points on appeal.