Ericka J. SAUVAIN, Amy Leigh Sauvain, by Next Friend Ericka J. Sauvain, and Bonnie S. Hughes, Respondents,

v.

ACCEPTANCE INDEMNITY INSURANCE COMPANY, Appellant.

No. WD 72343.

Missouri Court of Appeals, Western District.

April 12, 2011.

Stephen R. Bough, Kansas City, MO and Michael W. Blanton, Leawood, KS, for respondents.

John G. Schultz and Timothy P. Price, Kansas City, MO, for appellant.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

This is an action in equitable garnishment based on disputed insurance coverage for an automobile accident. Acceptance Indemnity Insurance Company ("Acceptance") appeals the judgment of the trial court, which granted summary judgment in favor of Amy Sauvain, Ericka Sauvain, and Bonnie Hughes (collectively "Plaintiffs"), and denied Acceptance's cross-motion for summary judgment, as it pertained to Plaintiffs' equitable garnish-

ment action brought against Acceptance. For the reasons explained herein, we reverse in part and remand this matter to the trial court.

## Factual Background

In the underlying lawsuit, Plaintiffs brought suit alleging that David Bowman, Jr.'s ("Bowman, Jr.") negligence caused a head-on vehicular collision with a vehicle operated by John Sauvain, III ("Sauvain") in Barry County, Missouri on April 30, 2005.[1] Bowman, Jr. was driving a 1998 Ford Contour at the time of the collision, and Sauvain was driving a 1998 Ford Escort. Bonnie Hughes ("Hughes") was a passenger in Sauvain's car. Sauvain passed away from the injuries he sustained in the collision, and Hughes suffered serious physical injuries.

In an underlying bench trial in Clay County Circuit Court, the trial court found Bowman, Jr. liable, and entered a judgment against him and in favor of Plaintiffs. Specifically, Sauvain's heirs were awarded $2,000,000, and Hughes was awarded $4,000,000. Prior to the trial in the underlying lawsuit, Plaintiffs entered into a settlement agreement pursuant to Section 537.065[2] with Bowman, Jr. and in addition, Bowman, Jr.'s personal auto insurer, USAA, agreed to pay the sum of $50,000.[3]

On July 14, 2008, Plaintiffs brought the instant action in the Clay County Circuit Court in an attempt to garnish an insurance policy that they contend insured Bowman, Jr. at the time of the accident. But the gravamen of the instant lawsuit was that this was an *additional* insurance poli-

cy that covered Bowman, Jr. during the relevant time period.

To explain the dispute regarding this second insurance policy, we must turn to the facts surrounding the sale of the Ford Contour Bowman, Jr. was driving at the time of the collision. While the parties to this lawsuit hotly contest the legal implications of the facts pertaining to the sale of the Ford Contour, there is very little dispute as to the facts surrounding the transaction.

### A. Ford Contour Sales Transaction

Prior to the collision, David H. Bowman, Sr. ("Bowman, Sr.") told his son, Bowman, Jr., that he wished to purchase Bowman, Jr. an automobile as a wedding present. Accordingly, the Bowmans went together to a used car dealer, USA Cars, Inc., ("USA Cars") located in Wylie, Texas, which was near where the Bowmans were living at that time.

The Bowmans each test drove the Contour, and eventually Bowman, Sr. signed a document to purchase the vehicle for $4,257.00 on March 24, 2005. No representative for USA Cars signed the purchase agreement. Notwithstanding this fact, Bowman, Sr. paid the sales price in full, was given a receipt and the car keys by USA Cars, and Bowman, Sr. drove the vehicle off the lot on that day. No title was given to either Bowman at that time.

### B. Insurance Policy At Question In This Lawsuit

Acceptance issued USA Cars a "garage" insurance policy ("Policy"), that insured USA Cars from March 16, 2005 to March

---

1. The underling lawsuit is case number 07CY–CV10430.

2. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

3. To be precise, this insurance policy was taken out by Bowman, Sr. and this amount constituted the limits of that policy.

16, 2006. Pursuant to this Policy's terms, Acceptance agreed to insure USA Cars from loss on certain "autos" that were "owned" by USA Cars.

## C. Instant Lawsuit

Plaintiffs alleged in the instant lawsuit that this Policy covered the Contour because the automobile "was titled to and owned by USA Cars" on the date of the accident. While the lawsuit acknowledged that the Bowmans had obtained possession of the automobile from USA Cars prior to the accident, it nonetheless contended that Bowman, Jr. was insured pursuant to the terms of the Policy. Plaintiffs sought "to have the insurance proceeds provided for in the Policy applied to the satisfaction of the Judgment" pursuant to the underlying lawsuit.

After the current action was filed, Plaintiffs and Acceptance filed opposing summary judgment motions as to the Policy coverage on the day of the accident. The trial court issued a judgment that granted Plaintiffs' motion for summary judgment and denied Acceptance's motion for summary judgment. Acceptance now appeals both rulings.

Further factual details will be outlined in the analysis section below as necessary for the resolution of this appeal.

## Analysis

In Point One, Acceptance argues that the trial court erred in granting Plaintiffs' motion for summary judgment because the Policy did not cover this loss in light of the uncontroverted facts demonstrating that USA Cars did not own the vehicle at the time of the accident.

## A. Texas Substantive Law Governs The Resolution Of This Matter

Prior to turning to the merits of the instant appeal, we must first note that no party to this litigation disputes that Texas substantive law governs the substantive issues in this dispute. In granting the Plaintiffs' summary judgment motion, the trial court relied, in part, on Texas law.

■ "In substantive matters, Missouri follows the 'most significant relationship' test of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, section 188, in determining what law applies." *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.,* 155 S.W.3d 50, 58 (Mo. banc 2005); *see also Accurso v. Amco Ins. Co.,* 295 S.W.3d 548, 551 (Mo.App. W.D.2009) ("Missouri has adopted sections 188 and 193 of the RESTATEMENT (SECOND) CONFLICT OF LAWS (1971) for determining choice of law issues as they relate to insurance contracts."). "As to procedural matters, such as summary judgment standards, this Court applies Missouri procedural law." *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.,* 155 S.W.3d at 58. Because it is not disputed by the parties that the principle location of the insured risk was Texas, we need not be detained in outlining each and every fact that demonstrates that Texas substantive law governs herein. *Id.* ("Owner and Insurer agree that the trial court correctly found that Texas substantive law governs whether the trial court properly granted Insurer's motion for summary judgment based on" terms of the Policy).[4]

■ "Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinc-

---

4. In summary, it is worth noting that the Policy was issued to USA Cars to insure its fleet of automobiles which are located solely in Texas, and that this is in fact where Bowman, Sr. obtained the vehicle in question.

tion between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit." *Wilkes v. Mo. Highway and Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988); *see also Doe v. Roman Catholic Diocese,* 862 S.W.2d 338, 341 (Mo. banc 1993).

## B. Summary Judgment Standards

"The standard of review of appeals from summary judgment is essentially *de novo.*" *State ex rel. Koster v. Olive,* 282 S.W.3d 842, 846 (Mo. banc 2009) (citing *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). "The Court will review the record in the light most favorable to the party against whom judgment was entered." *Id.* "Summary judgment shall be entered if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Rule 74.04(c)(6)).[5]

## C. The Trial Court's Judgment Granting Plaintiffs' Motion For Summary Judgment

In granting Plaintiffs' summary judgment motion, the trial court concluded that "Plaintiffs have set forth uncontroverted facts establishing that [Bowman, Jr.] is an insured under the Policy and that the collision which was the subject of its underlying judgment is covered by the omnibus

clause of the Policy." In reaching the conclusion that Acceptance was liable under the Policy, the trial court set forth two distinct rationales, both of which Acceptance challenges in this Point.

**1. Whether Acceptance Waived A Defense Not Raised In Its Denial Letter To Bowman, Jr., Refusing To Defend and Indemnify Him In The Underlying Lawsuit**

■ The trial court noted that Acceptance "attempts to deny liability on the ground that the vehicle in question was owned by David H. Bowman, Sr. at the time of the collision," but concluded that as a matter of law, Acceptance "is not entitled to deny liability on this ground which was not identified in its denial letters." This is commonly referred to as the "denial letter rule."

■ An "insurer, having denied liability on a specified ground, may not thereafter deny liability on a different ground." *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384, 386 (Mo. banc 1989) (quotation marks omitted).[6] In *Brown,* the Missouri Supreme Court summarized and clarified the principles pertaining to the denial letter rule, and noted that it was based on the distinct doctrines of waiver and estoppel. *Id.* at 388. "An examination of the cases shows estoppel, with some element of unfairness, lack of notice, or other detriment to the insured, rather than voluntary waiver without such element, is the preferred theory when the insurer elects a policy defense." *Id.* (internal quo-

**5.** All rule citations are to Missouri Supreme Court Rules (2010), unless otherwise indicated.

**6.** The parties agree that the analysis of whether Acceptance waived this defense was procedural and, therefore, controlled by Missouri law. "Regardless of which state's law governs the substantive issues involved in this case, however, procedural questions are de-

termined by the state law where the action is brought." *Williams v. Silvola,* 234 S.W.3d 396, 399 (Mo.App. W.D.2007) (quotation marks omitted); *see also Adams v. One Park Place Investors, LLC,* 315 S.W.3d 742, 753 (Mo.App. W.D.2010) ("Missouri, the forum, considers statutes of limitations issues procedural, and therefore governed by Missouri law.").

tation marks omitted). While the Court in *Brown* did "not preclude the application of the waiver doctrine under the appropriate circumstances," it held that waiver is inappropriate "in the absence of either (1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right." *Id.*; *Century Fire Sprinklers, Inc. v. CNA/Transportation Ins. Co.*, 87 S.W.3d 408, 416 (Mo.App. W.D.2002).

Turning to the doctrine of estoppel, the Missouri Supreme Court held that the following principles are applicable in the realm of insurance law:

> [E]stoppel requires (1) an admission, statement or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. Thus, under an estoppel theory, the insurer must first announce a specific defense and subsequently seek to rely instead on an inconsistent theory. Having denied liability for a stated reason, an insurer may not later assert a different one. Once an insurer denies liability on a given ground, it may not thereafter defend on a different ground. It is often stated that if an insurer denies liability upon a specified ground or defense, all other grounds or defenses are waived.
> It is the announcement of the specific defense which lulls the insured into relying to his detriment and subsequent injury on the insurer's stated position. Thus the rationale of these cases is that the plaintiff has relied to his detriment on the assertion of the defense by preparation to meet that issue and that the defendant may not shift the grounds of

the defense after the fact. No estoppel results where no prejudice results to the claimant from reliance on the statement of the insurer.

> But the converse is true, as well; absent a statement which excludes other defenses and upon which the insured reasonably relies in preparing to preserve its claim, estoppel is not applicable. And where the insurer's initial denial is stated in such a way that it reasonably implies the subsequently, but more specifically stated, consistent reason for denial, the insured cannot claim she changed her position or relied to her detriment on the insurer's initial denial; estoppel may not be invoked.

*Brown*, 776 S.W.2d at 388–89 (internal citations and quotations marks omitted).

After the accident, Bowman, Jr.'s counsel requested in writing that Acceptance defend and indemnify Bowman, Jr. in the underlying lawsuit pursuant to the Policy's terms. In refusing to defend and indemnify Bowman, Jr., Acceptance sent Bowman, Jr. two letters that contended "Mr. Bowman became the legal owner of the vehicle at the time of purchase from USA Cars, Inc. on or about March 24, 2005, and thereafter, he was solely responsible for any acts of negligence committed by him involving said vehicle."

In granting Plaintiffs' summary judgment motion, the trial court noted that "[i]n both denial letters [Acceptance] set forth only two grounds for denial of coverage: (1) that the vehicle in question was owned by David H. Bowman, Jr. at the time of the collision, and (2) that David H. Bowman, Jr. was a customer of USA Cars, Inc." The trial court further found: "Having denied liability only on the two specific grounds identified in its denial letters, Defendant may not now attempt to deny liability on different grounds [that the automobile was owned by Bowman, Sr.]." *Id.*

(citing *Burns Nat. Lock Installation Co., Inc. v. American Family Mut. Ins. Co.,* 61 S.W.3d 262 (Mo.App. E.D.2001); *Stone v. Waters,* 483 S.W.2d 639, 642 (Mo.App. 1972)).

The essence of Plaintiffs' position on the first ground is that Acceptance, in its denial letters took the position that Bowman, Jr. was the owner of the vehicle and in its motion for summary judgment; Acceptance took the position that Bowman, Sr. was the owner of the vehicle. To support its conclusion that summary judgment was proper on the first ground, the trial court cited the above two Missouri cases, both of which Plaintiffs rely on exclusively in urging this Court to affirm the trial court. However, neither of these cases can be read to hold that Acceptance was estopped from raising its defense because Acceptance's denial letters fairly apprised Plaintiffs of its underlying defense: that the Policy did not cover the automobile because USA Cars did not own the automobile on the date of the accident. Indeed, *Burns* and *Stone* both help illustrate why the trial court erred in concluding that Acceptance was precluded from raising this defense.

In *Burns,*[7] a lock company brought vexatious refusal to pay suit against insurance company after insurer refused to pay a claim for loss to lock company for its negligent installation of locks at a hotel. 61 S.W.3d at 264. In denying the claim, insurance company sent a denial letter to its insured stating that the Policy did not cover this property damage based on specific provisions of the insurance policy. *Id.* at 265. Prior to trial, the trial court granted a motion in limine precluding the insur-

ance company from adducing any evidence at trial regarding any other exclusion other than those expressly outlined in its denial letter, "exclusions 'k' and 'l' of the Policy." *Id.* at 267. At trial, the insurance company objected to the trial court's ruling on the basis that it both precluded insurance company from presenting relevant evidence at trial, and also because the trial court refused to submit jury instructions based on definitions contained in other provisions of the policy. *Id.*

In affirming the trial court, the Eastern District noted that "under an estoppel theory, the insurer must first announce a specific defense and subsequently seek to rely on an inconsistent theory," and found that "the original denial letter ... announce[d] a specific defense, namely work product exclusions 'k' and 'l' of the Policy." *Id.* at 267–68 (citing *Brown,* 776 S.W.2d at 386). But the Eastern District did not rely solely on the denial letter in affirming the trial court; the Court also put significant emphasis on the insurance company's conduct after the filing of the lawsuit. To begin with, the Court reviewed the insurance company's discovery responses that expressly required it to outline "*any reasons* that American Family has for its denial of coverage," and noted that the insurance company also regurgitated the same narrow policy defenses. *Id.* Moreover, the Court further noted that "the Second Amended Answer served to admit coverage of the claim but for work product exclusions 'k' and 'l' of the Policy," and that the insurer's First Request For Stipulations also stipulated to the same. *Id.* Based on this continuing assertion of this narrow defense by insurer, the Eastern District concluded that prejudice was obvi-

7. It should be noted that this Court is reviewing a ruling on a motion for summary judgment which implicates a host of concerns, which were not present in *Burns.* For example, *Burns* dealt with evidentiary and jury

instruction issues and, thus, the Eastern District made clear that its review was solely for an abuse of discretion. 61 S.W.3d at 267 n. 2. In stark contrast, our review in the present action is *de novo.*

ous because "[f]or at least two years *after* the filing of the Petition, American Family identified as its defense to Burns's claim the application of work product exclusions 'k' and 'l' of the Policy." *Id.* at 269 (emphasis added).

We do not believe *Burns* supports the conclusion that Acceptance was estopped from raising its defense in the instant action. Plaintiffs fail to show how Acceptance has prejudiced the Plaintiffs by stating the ownership of the vehicle was in the name of Bowman, Jr. rather than Bowman, Sr.

When reviewing Acceptance's denial letters, it is clear that the basis for the denial of coverage was that "Mr. Bowman became the legal owner of the vehicle." *Burns* focused heavily on the fact that the insurer repeatedly referred to the same provisions of the Policy throughout the dispute of the claim, and thus this demonstrated that it "announce[d] a specific defense" and then "subsequently [sought] to rely on an inconsistent defense" of another provision of the policy. *Id.* at 268. But this analysis is inapplicable to the instant case because the language used by Acceptance in its denial letter put Plaintiffs on notice that it was using the *same* provision of the Policy to deny coverage that it did in its summary judgment response, namely the "Owned Private Passenger 'Autos' Only" provision of the Policy. The only inconsistent position taken by Acceptance was that Bowman, Sr. owned the automobile as opposed to Bowman, Jr. Plaintiffs have not alleged or demonstrated any prejudice in this regard because the language in the denial letter ("Mr. Bowman became the legal owner of the vehicle") did not implicate a different defense or a defense based on a different portion of the

Policy than the language Acceptance used in its summary judgment motion (that USA Cars did not own the Vehicle at the time of the collision).

■ When applying the above principles of estoppel as outlined by the Missouri Supreme Court in *Brown,* we find that the trial court erred in granting Plaintiffs' motion for summary judgment on the basis that Acceptance was estopped from raising as a defense that USA Cars did not own the automobile in question thereby precluding coverage pursuant to the Policy. "[W]here the insurer's initial denial is stated in such a way that it reasonably implies the subsequently, but more specifically stated, consistent reason for denial, the insured cannot claim she changed her position or relied to her detriment on the insurer's initial denial; estoppel may not be invoked." *Brown,* 776 S.W.2d at 389. In reviewing the record in the light most favorable to Acceptance, it is difficult to ascertain how the denial letter's language that "Mr. Bowman became the legal owner of the vehicle" did not put Plaintiffs on reasonable notice of the subsequently clarified but consistent defense by Acceptance that USA Cars did not own the vehicle.

■ The second element of an estoppel claim requires "action by the other party on the faith of such admission, statement or act" and no "estoppel results where no prejudice results to the claimant from reliance on the statement of the insurer." *Brown,* 776 S.W.2d at 386, 389. Here, Plaintiffs assert that Bowman, Jr. was prejudiced because he "was forced to enter into a settlement because [Acceptance] refused to provide him with a defense as a result of its denial of coverage." [8] Even assuming that Plaintiffs may

---

8. By entering into an agreement with Bowman, Jr. under 537.065, the Plaintiffs stepped into the shoes of Bowman, Jr., and has rights

no greater or no less than what Bowman, Jr. would have against his insurer. *Carroll v. Missouri Intergovernmental Risk Management*

demonstrate prejudice via Bowman, Jr., we conclude that the doctrine of judicial estoppel does not apply to this case.[9]

Finally, Plaintiffs do not attempt to assert on appeal that Acceptance's conduct in sending these denial letters somehow constituted a "waiver" because they were neither "(1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right." *Brown,* 776 S.W.2d at 388.

For all of these reasons, we hold that the trial court erred in granting summary judgment on the basis that Acceptance "may not pursue the defense that the vehicle in question was owned by David H. Bowman, Sr. at the time of the collision."

### 2. Whether The Policy Covered Bowman, Jr. On The Day Of The Accident

■ Distinct from the waiver/estoppel issue, in granting the Plaintiffs' motion for summary judgment, the trial court reasoned as follows:

> [T]his Court also holds that [Acceptance] could not prevail on said defense [that Bowman, Sr. owned the vehicle] because the uncontroverted facts establish that the vehicle was not owned by David H. Bowman, Sr. at the time of the collision. Pursuant to the Texas case law that has been presented to the Court by [Acceptance], a transfer of

ownership for insurance purposes requires, at a minimum, a showing that there has been a fully executed purchase agreement and that the vehicle in question has been placed in the possession of the purported purchaser. In this case there is no fully executed purchase agreement because the purchase agreement in issue expressly states that it is not binding until signed by USA Cars, Inc, and the purchase agreement was never signed by USA Cars, Inc.[10]

Because Plaintiffs were the claimant-movants granted relief below, the following law pertains to the trial court's grant of summary judgment:

> To be entitled to summary judgment, the movant must demonstrate that: (1) there is no genuine dispute as to the material facts on which he relies for summary judgment; and (2) based on those facts, he is entitled to judgment as a matter of law. The right to judgment as a matter of law differs significantly depending upon whether the movant is a "claimant" or a "defending party." In our case, the movant, the State, is a claimant. A claimant-movant, to be entitled to summary judgment, must establish that there is no genuine dispute as to those material facts upon which he would have had the burden of persuasion at trial, entitling him to judgment as a matter of law. Thus, a claimant, to

*Ass'n,* 181 S.W.3d 123, 126 (Mo.App. W.D. 2005).

**9.** The denial of a claim standing alone is insufficient to demonstrate prejudice as a matter of law. "Prejudice beyond the mere filing of a lawsuit is required for estoppel to apply." *Shahan v. Shahan,* 988 S.W.2d 529, 534 (Mo. banc 1999). While *Stone* found that "the expense of bringing suit" was sufficient to demonstrate prejudice, the Missouri Supreme Court expressly found that "[t]o the extent, however, that those cases say that the mere trouble and expense of bringing suit is

sufficient prejudice to support estoppel in all cases, they are incorrect." *Brown,* 776 S.W.2d at 388.

**10.** While the actual agreement between Bowman, Sr. and USA Cars does not specifically require signatures of both parties before it is valid, Acceptance did make a legally binding admission pursuant to Plaintiffs' summary judgment motion that the contract did in fact require the signatures of both parties in order to be valid and also admitted that USA Cars did not sign the agreement.

be entitled to summary judgment, must allege undisputed facts establishing each and every element of his claim. And, if an affirmative defense has been properly alleged by the non-movant, the claimant must also allege undisputed facts that negates one or more of the proof elements of that defense.

*State ex rel. Nixon v. Watson,* 204 S.W.3d 716, 719 (Mo.App. W.D.2006) (citations and quotation marks omitted).

Here, Plaintiffs have the burden of proof on each and every element of its equitable garnishment claim. Accordingly, the key legal dispute below was whether Bowman, Jr. was covered pursuant to the Policy's terms on the date of the accident. *Ohio Cas. Group v. Risinger,* 960 S.W.2d 708, 711 (Tex.App.–Tyler 1997) ("In a suit against an insurance company on a liability policy, [injured party] was required to plead and prove that there was a valid policy in effect at the time of the harm, and that he was a judgment creditor of that policy as a third party beneficiary."); *Dairyland County Mut. Ins. Co. of Texas v. Childress,* 650 S.W.2d 770, 775 (Tex. 1983) ("There is no question in our minds that the compulsory insurance requirement of the Texas motor vehicle safety laws implies that all potential claimants for damages resulting from automobile accidents are intended as beneficiaries of the statutorily required automobile liability coverage.... It is a matter of simple logic to infer that the statutory obligation holding an insured liable for damages in automobile accidents also makes claimants for such damages the intended beneficiaries of an insurance policy purchased to satisfy the statutory requirement."); *Carroll v. Missouri Intergovernmental Risk Management Ass'n,* 181 S.W.3d 123, 127 (Mo. App. W.D.2005) ("This is an action for equitable garnishment, pursuant to Section 379.200, where an injured party can seek recovery against a tortfeasor's insurer. The plaintiff, therefore, stands in the shoes of the insured, and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer on the policy.").

Here, the Policy in question provided that it covered those "autos" that were "owned" by USA Cars and, thus, it is not disputed by any party to this lawsuit that if USA Cars did not own the automobile at the time of the accident that the Policy would not cover this loss.[11] The trial court expressly found that "the vehicle was not owned by David H. Bowman, Sr. at the time of the collision" and, therefore, implicitly found that the vehicle was in fact owned by USA Cars. Thus, it concluded that Bowman, Jr. was covered under the Policy.

In disputing which party owned the automobile on the date of the accident, the parties rely on the *same* Tex-as case law to support their respective positions. Specifically, the parties both look to the same language of Supreme Court of Texas's holding in *Gulf Insurance Co. v. Bobo,* wherein the Court concluded that ownership of a vehicle in this context is transferred "after an agreement is reached and delivery is made" because "the buyer, and not the seller, has control over the vehicle." 595 S.W.2d 847, 848 (Tex.1980).[12]

---

**11.** The specific language stated the following: "Owned Private Passenger 'Autos' Only. Only the private passenger 'autos' you own. This includes those private passenger 'autos' [USA, Cars] acquires ownership of after the policy begins."

**12.** The parties further agree that while "[a] sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied" that under Texas law "[t]he name on the certificate of title, however, is not conclusive of ownership."

In *Gulf Insurance Co.*, the Texas Supreme Court dealt with a similar issue of whether a seller's insurance policy provided coverage of a vehicle after it was sold to a buyer. *Id.* at 848. There, the seller agreed to sell his pickup truck to the buyer, subject to proof of insurance and completion of the paperwork. *Id.* The buyer took possession of the truck and, one day before the meeting to complete all conditions of sale, the buyer wrecked the truck injuring plaintiffs. *Id.* Plaintiffs obtained a default judgment against buyer, and then sought to collect on it from seller's insurance company claiming that buyer was an additional insured under the policy. *Id.*

In concluding that buyer "was not an additional insured under the policy," the Court set out the following applicable legal standards:

> A conditional vendee does not use the insured vehicle with the consent of the vendor and is not covered as an additional insured under the omnibus clause of a liability insurance policy because after an agreement is reached and delivery is made, the buyer, and not the seller, has control over the vehicle. The seller might retain legal title as a security interest, but between the buyer and seller, the seller has no right to possess or control the vehicle.
>
> After agreeing to the terms of the sale, providing [seller] with proof of insurance, and taking possession of the pickup, [buyer] acquired the right to possession and the power to control the use of the vehicle. At that point there was a completed contract which [seller] had performed by delivering the truck in exchange for the consideration of [buyer's] promise to pay [seller's] debt at the bank and his procurement of insurance on the truck.... Therefore, when the accident occurred, [buyer] was not driving by [seller's] permission because he did not need anyone's permission to drive his own vehicle. Under his contract to buy, he had the sole right to control the use of the vehicle, and it was up to him, and no one else, to grant or deny permission to drive.

*Id.* at 848 (citations omitted).

On appeal, Plaintiffs echo the rationale of the trial court in concluding that *Gulf Insurance Co.* holds that "a transfer of ownership for insurance purposes requires, at a minimum, a showing that there has been a *fully executed purchase agreement* and that the vehicle in question has been placed in possession of the purported purchaser." (Emphasis added.) We disagree. The relevant Texas cases do not require a fully executed purchase agreement, per se, but instead focus on whether the particular facts of the case permit the conclusion that the parties had the current intent to effect a sale. In interpreting

*Tyler Car & Truck Center v. Empire Fire & Marine Ins. Co.*, 2 S.W.3d 482, 485 (Tex.App.–Tyler, 1999). "Evidence of the name in which an automobile is registered raises only an administrative presumption of ownership which is not evidence of ownership and which vanishes when positive evidence to the contrary is introduced." *Id.* (quotation marks omitted). "The Certificate of Title Act was designed to lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens." *Id.* "The Act was not designed to prevent sales and transfers of automobiles as between a buyer and a seller." *Id.* "Thus, the sale of an automobile which may not be in exact compliance with the Act may still be valid as between the buyer and seller." *Id.*

Accordingly, while Bowman, Sr. did not obtain title of the automobile until after the accident, no party on appeal contends that, under Texas law, this fact is dispositive of the ultimate issue of liability. This stands in contrast to Missouri law, which looks almost exclusively to the title of the vehicle in determining ownership.

*Gulf Insurance Co.*, the Court of Appeals in Texas has been consistent in holding that "[t]he right to possession and the power to control the use of the auto determines the auto's ownership for insurance coverage purposes." *Tyler Car & Truck Center v. Empire Fire & Marine Ins. Co.*, 2 S.W.3d 482, 484 (Tex.App.–Tyler1999) (citing *Gulf Ins. Co.*, 595 S.W.2d at 848); *see also Trull v. Service Cas. Ins. Co.*, 2008 WL 2837775, *2 (Tex.App.–Hous.2008) ("The [*Gulf Insurance Co.*] court held that the right to possess the vehicle and the power to control its use determines its ownership for insurance purposes."). *Trull* held that the courts should look to "the transfer of possession and control of the vehicle, pursuant to the *parties' intent to effect the sale*" to determine ownership for insurance purposes. *Id.* at *3. *Trull* clearly anticipates that there can be situations where there is the transfer of possession and control of the vehicle, without the parties' current intent to effect a sale thereof, which would give rise to liability to the title owner's insurer.

Indeed, the right to possession and power to control test as an indicator of the parties' current intent to effect a sale can easily be gleaned from the Texas Supreme Court's own words in *Gulf Insurance Co:*

> In this case [seller] had neither the right nor the power to control [buyer's] use of the pickup truck. A buyer of a vehicle does not become an additional insured under the seller's policy merely because of the conditional nature of the sales transaction. Thus, [plaintiffs] are not entitled to recover under [seller's] policy with [insurance company] because [buyer] was not an additional insured under the policy.

595 S.W.2d at 849.

■ Given the standard for determining whether the parties intended to transfer ownership described in *Gulf Insurance Co.* and *Trull,* the trial court erred in granting Plaintiffs' motion for summary judgment because the trial court erroneously focused on whether the purchase agreement was fully executed, and not on the relevant test—whether the uncontroverted facts indicated the parties intended to transfer ownership at the time Bowman, Sr. took possession of the vehicle. As noted in *Gulf Insurance Co.,* "after an *agreement* is reached and *delivery* is made, the buyer, and not the seller, has control over the vehicle." 595 S.W.2d at 848 (emphasis added). Here, it was uncontroverted that Bowman, Sr. paid USA Cars the full sale price of $4,257 for the 1998 Ford Contour. Furthermore, it was uncontroverted that USA Cars delivered the vehicle to Bowman, Sr. and that he took possession and control of the vehicle. However, it was also uncontroverted on summary judgment that pursuant to the express terms of the purchase contract used by USA, Cars, in order to have a binding contract, the contract had to be signed by both parties and that the purchase agreement in this case was not in fact signed by USA Cars.[13] It is also an

---

13. We are not suggesting that a purchase agreement signed by both parties is required to demonstrate an intent to transfer ownership. Nowhere does *Gulf Ins. Co.* state that a contract must be signed by both parties in order for a sale and transfer to occur. "To constitute a valid contract in writing it is not necessary that the agreement be signed by both parties, for if one party signs, the other may accept by his acts, conduct, or acquies-cence in the terms of the contract." *Velasquez v. Schuehle,* 562 S.W.2d 1, 3 (Tex.Civ. App.1977) (citing *Morgan v. Stover,* 511 S.W.2d 362 (Tex.Civ.App.Eastland 1974, writ ref'd n.r.e.); *Orgain v. Butler,* 478 S.W.2d 610 (Tex.Civ.App.Austin 1972, no writ); *Rubin v. Polunsky,* 366 S.W.2d 234 (Tex.Civ.App.San Antonio 1963, writ ref'd n.r.e.); *Chavez v. Goodman,* 152 S.W.2d 826 (Tex.Civ.App.El Paso 1941, no writ); 13 Tex.Jur.2d Contracts

uncontroverted fact that Bowman, Sr. called USA Cars to ask permission for Bowman, Jr. to leave the state in the car. Taken together, these facts create a disputed factual issue as to the intent of the parties to effect the sale under the standard anticipated in *Gulf Insurance Co.* and more specifically enunciated in *Trull.* Thus, Plaintiffs were not entitled to summary judgment because as a matter of law, they could only recover under the Policy if USA Cars owned the vehicle at the time of the collision, and based on the record before the trial court this was a material fact in dispute pursuant to Texas law.

We conclude that the trial court erred in entering judgment in favor of Plaintiffs because they were not entitled to judgment as a matter of law on the undisputed facts. Point One is granted.[14]

**Acceptance's Motion For Summary Judgment**

█ In its final Point Relied On, Acceptance argues that the trial court "erred in overruling Acceptance's motion for summary judgment because there is no genuine dispute of material fact and Acceptance is entitled to judgment as a matter of law." We disagree.

The standard of review when considering an appeal from summary judgment is essentially *de novo. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 119–20 (Mo. banc 2010). "A defending party moving for summary judgment may establish a right to judgment by showing facts that negate any one of the claimant's elements." *Id.* at 120. "If the moving party makes a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party then has a specific burden: 'A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Rule 74.04(c)(2)). "The court accords the non-moving party the benefit of all reasonable inferences in the record." *Id.*

█ "Generally, an order denying a party's motion for summary judgment is not a final judgment and is therefore not subject to appellate review." *Schroeder v. Duenke,* 265 S.W.3d 843, 850 (Mo.App. E.D.2008). "However, the denial of a motion for summary judgment may be reviewable when, as in this case, the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party." *Id.* (quotation marks omitted); *see also Estate of Downs v. Bugg,* 242 S.W.3d 729, 732 (Mo.App. W.D.2007) ("To the extent the merits of Mr. Bugg's motion are 'completely intertwined' with the grant of summary judg-

---

s 76 at 220 (1960); 1 Corbin on Contracts, Acceptance by Overt Acts s 62 (1950)). However, when the form purchase agreement expressly requires the signatures of both parties to create a binding contract, the absence of one signature is certainly relevant in evaluating whether the parties intended to transfer ownership.

14. Because of our disposition in Point One, we need not consider Acceptance's other two Points Relied On that also argue that the trial court erred in granting summary judgment in favor of Plaintiffs.

ment in the Estate's favor, we will address his arguments in that context.").

When reviewing Acceptance's motion for summary judgment, there can be no doubt that its motion is completely intertwined with the grant of summary judgment in Plaintiffs' favor. *Lopez v. American Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 (Mo. App. W.D.2002) ("Here, the sole issue appears to be an issue of law, and the Lopezes motion for summary judgment is intertwined with American Family's. Indeed, the denial of one motion leads directly to the conclusion that the other should be granted."). Acceptance argues that its motion for summary judgment should be granted for the same reason that Plaintiffs' summary judgment motion should be denied: that based on the undisputed facts Plaintiffs will never be able to demonstrate that USA Cars owned the vehicle in question on the date of the accident. We disagree.

 Acceptance's argument on appeal ignores that Texas law holds that the possession and control must be coupled with, "the parties intent to effect the sale" on the day of the transaction. *Trull*, 2008 WL 2837775, *3. Here, we cannot say that there are no disputed issues as to the parties' intent when the transaction took place on March 24, 2005. "[I]n determining a summary judgment motion, the judge ... is not to decide what the facts are or to make credibility determinations, but simply to determine whether there is a triable issue of fact." *Care and Treatment of Schottel v. State*, 159 S.W.3d 836, 844 (Mo. banc 2005).

The same disputed facts which prevent the entry of judgment in favor of Plaintiffs as a matter of law also prevent the entry of judgment in favor of USA Cars as a matter of law. To mention just one example, it was undisputed before the trial court that after Bowman Sr. took posses-sion of the vehicle but "[b]efore Bowman Junior took the Vehicle out of state, Bowman Senior checked with USA Cars to be sure that it was okay to take the Vehicle out of state and USA Cars gave its permission for Bowman Junior to take the vehicle out of state." This fact coupled with the admission by Acceptance that the contract was not binding until signed by both parties and that it was not signed by USA Cars creates a factual dispute under Texas law. We believe that a reasonable fact-finder would not be precluded from finding that Bowman Sr. and USA Cars did not have an "intent to effect the sale" based on these undisputed facts. Ultimately, it is for the fact-finder, and not the trial court, to determine whether Bowman Sr. and USA Cars intended "to effect the sale" based on the facts in this case. *Care and Treatment of Schottel*, 159 S.W.3d at 844. Accordingly, we conclude that the trial court did not err in denying Acceptance's motion for summary judgment.

Point Four is denied.

## Conclusion

We conclude that the trial court erred in granting Plaintiffs' motion for summary judgment, but further hold that the trial court did not err in denying Acceptance's motion for summary judgment. Accordingly, the trial court's judgment is reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

All concur.