

# In the
# Missouri Court of Appeals
# Western District

VENTAS, INC., )
)
Appellant, )
) **WD87288**
v. )
) **OPINION FILED:**
CITY OF KANSAS CITY, MISSOURI, )
FINANCE DEPARTMENT, ) **JUNE 3, 2025**
REVENUE DIVISION, )
)
Respondent. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Justine E. Del Muro, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Janet Sutton, Judge, James Edward Welsh, Special Judge**

Ventas, Inc. ("Ventas") appeals the circuit court's Judgment and Order granting the

City of Kansas City, Missouri, Finance Department, Revenue Division's ("the City")

Motion for Summary Judgment on Ventas's "Petition for Recovery of Amounts Paid

Under Protest." On appeal, Ventas contends the circuit court, 1) misinterpreted Kansas

City Regulation 1.382(e)(4) to incorrectly conclude that Ventas's receipt of rental income

from real estate held as investments as a real estate investment trust ("REIT") is a

business activity subject to Kansas City's earnings tax; 2) misinterpreted Kansas City

Ordinance § 68-381 to incorrectly conclude that Ventas's federally required dividend paid

deductions are not deductible expenses in calculating Kansas City's earnings tax; 3) erred in upholding the assessed interest and penalties. We affirm in part and reverse in part.

## Background and Procedural Information

On May 26, 2023, Ventas filed a "Petition for Recovery of Amounts Paid Under Protest." Therein, Ventas sought recovery of earnings and profits tax paid to the City for the 2017, 2018, 2019, 2020, and 2021 tax years ("Tax Periods") assessed under Notice of Assessment Letter ID L342049536 and paid under protest pursuant to Section 139.031(1).[1]

Ventas alleged that, for the Tax Periods, the City erroneously imposed earnings and profits tax on rental income from investment properties, which is not earned from activity conducted by Ventas in Kansas City; therefore, the income is not subject to the City's tax under Kansas City Ordinance Section 68-382. Further, that if such income is deemed "earned" by the court, in calculating Ventas's net earnings for tax purposes, the City erroneously failed to consider the dividends paid deduction as a necessary expense to Ventas's operations as a healthcare REIT. Ventas sought $91,789.96 paid under protest for assessed taxes, interest, and penalties.

During the Tax Periods, Ventas qualified as and elected to be taxed as a REIT. Ventas owns over 1,200 real estate investment assets, with four medical office buildings in Kansas City. As to the four medical office buildings in Kansas City, Ventas does not

_____

[1]All statutory references are to the Revised Statutes of Missouri, as updated through 2021, unless otherwise noted.

manage the properties; rather, they are managed by employees of a REIT affiliate.  As a REIT, Ventas's income is generated by real estate that Ventas owns as a passive investor, including the four real estate investment assets located in Kansas City.  To maintain its status as a REIT, Ventas is required by law to pay at least 90% of its taxable income as dividends to distribute its real estate investment income, and thus takes the federal dividends paid deduction against its federal taxable income, resulting in its federal taxable net income being zero (or close to zero).

Ventas timely filed its Form RD-80 profits return with the City for the 2017 tax year on October 11, 2018, showing an overpayment and requesting a refund.  Over four years later, on January 13, 2023, Ventas received Notice of Incomplete Return, Profits Tax Refund Request, Letter ID L0400491264, from the City which stated that the "other business deductions" on the Kansas City profits tax return appear to include a deduction for dividends paid to partners/owners.  Further, under Kansas City Earnings and Profits Tax Regulation § 1.382(e)(5)(G), expenses that are for the benefit of the owners of the company are not considered necessary business expenses and are therefore not deductible.

On February 3, 2023, Ventas responded that, rent, capital gains, dividends, and interest income are unearned income, and in any event are not earned from activity conducted by Ventas in Kansas City.  Further, to the extent that such could be considered "earned" income, the dividends paid deduction is a necessary expense to the operations of

Ventas as a REIT and must be considered in calculating Ventas's earnings for Kansas City tax purposes.

On February 23, 2023, Ventas also received a Notice of Assessment Letter assessing tax, interest, and penalties, with the balance totaling $90,622.24. On March 1, 2023, Ventas submitted a Notice of Protest and Dispute of Proposed Assessment, requesting a hearing and disputing the entire tax liability, including interest, penalties, and/or fees for the Tax Periods.

On March 20, 2023, Ventas received notice that its protest was denied, with the City determining that "the profit generated by Ventas to be earned income for purposes of the Earnings & Profits tax, and the dividends paid deduction on the return has been disallowed." The City issued a Statement of Collection on March 21, 2023, assessing additional interest from the February 3, 2023, Assessment Letter, increasing the total balance due to $91,789.96. On March 29, 2023, Ventas submitted payment, under protest pursuant to Section 139.031, for the full amount.

On May 26, 2023, Ventas filed its "Petition for Recovery of Amounts Paid Under Protest." Ventas alleged in Count I that the City had erroneously imposed earnings and profits tax on income not earned from activity conducted by Ventas in Kansas City, and Kansas City Ordinance Section 68-382 was inapplicable. Ventas alleged in Count II that, to the extent REIT income is determined to be "earned," the City erroneously failed to consider the dividends paid deduction as a necessary expense to Ventas's operations as a REIT in calculating Ventas's earnings for Kansas City tax purposes. In Count III, Ventas

4

argued that, because no tax is due, no penalties should have been assessed. Further, assuming taxes are due, Ventas had reasonable cause for failure to timely pay the taxes.

On November 17, 2023, Ventas moved for summary judgment on its petition. On January 19, 2024, the City filed suggestions in opposition to Ventas's motion, along with a cross motion for summary judgment. Ventas filed a reply memorandum February 16, 2024.

On May 14, 2024, the circuit court entered its Judgment and Order denying Ventas's motion for summary judgment, granting the City's cross motion for summary judgment, and entering judgment in favor of the City and against Ventas on Ventas's petition. The court concluded that Ventas's rental income from real estate is a business activity, earned income, and subject to the earnings tax pursuant to Reg. § 1.382(e)(4). Further, that Ventas is not entitled to a deduction for dividends paid, finding "they are simply not expenses" but, rather, "clearly distributions of profit." The court upheld the City's assessment for unpaid taxes, interest, and penalties.

This appeal follows.

## Standard of Review

The standard of review for an appeal challenging the grant of a motion for summary judgment is *de novo*. *Weeks v. St. Louis County*, 696 S.W.3d 333, 338 (Mo. banc 2024). We give no deference to the circuit court's decision, and use the same criteria the circuit court should have employed in determining whether summary judgment was proper. *Id.* We review the record in the light most favorable to the party

against whom judgment was entered, and give that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* Summary judgment is proper where the moving party demonstrates there is no genuine dispute as to the material facts, and a right to judgment as a matter of law. *Id.* "A genuine issue exists when the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Doe 122 v. Marianist Province of the United States*, 620 S.W.3d 73, 76 (Mo. banc 2021).

> A 'defending party may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58-59 (Mo. banc 2005).

### Point I – Kansas City Regulation 1.382(e)(4)

In its first point on appeal, Ventas contends the circuit court misinterpreted Kansas City Regulation 1.382(e)(4) when it concluded that Ventas's receipt of rental income from real estate held as investments as a REIT is a business activity subject to the Kansas City earnings tax, arguing that a proper interpretation and application of the regulation shows that Ventas's rental income from real estate is not "earned income" from an "activity" in Kansas City and, therefore, not subject to the Kansas City earnings and profits tax.

Pursuant to the Missouri Constitution, Mo. Const. Art. VI, § 19(a), and Section 92.111.1 of the Missouri Revised Statutes, the City may impose an earnings tax. As relevant to corporations, under Section 92.111.2(5), "earnings tax" means a tax on the "net profits earned by all corporations as the result of work done or services performed and business or other activities." Under Section 92.150, "The net profits or earnings of associations, businesses or other activities, and corporations shall be ascertained and determined by deducting the necessary expenses of operation from the gross profits or earnings."

Under Sec. 68-382(a)(5) of the City's Code of Ordinances, a tax of 1.0 percent per year is imposed on the net profits "of all corporations earned as a result of work done or services performed or rendered or business or other activities conducted in the city." Sec. 68-381 defines "Business" as "any enterprise, activity, profession, trade or undertaking of any nature, that generates gross receipts."[2]

Tracking Section 92.150 of Missouri's statutes, under Kansas City Regulation §1.381(s), "Net profits shall be determined by deducting the necessary expenses of operation from the gross profits or earnings." Under § 1.382(e)(4),

> Net profits from interest, dividends, rent or royalties shall generally be treated as unearned, but if after review of the facts the Commissioner finds that the interest, dividends, rent, or royalties were received for work done, services performed or rendered, or business or other activities conducted by

---

[2]Under the City's Earnings and Profits Tax Regulations, "Business" is likewise defined as "any enterprise, activity, profession, trade or undertaking of any nature that generates gross receipts." §1.381(b).

7

the taxpayer, the Commissioner may determine that the net profits derived therefrom were earned.

The parties filed a joint stipulation as to the relevant facts. The parties agree that Ventas qualifies and has elected to be taxed for federal purposes as a REIT under 26 U.S.C. § 857. Ventas leases roughly 80% of its REIT properties to tenants or independent third-party managers under "net" leases which obligate the tenants to pay all property-related expenses. These REIT properties are health care facilities under 26 U.S.C. § 856(e)(6)(D)(ii). The remaining 20% of REIT properties are medical service buildings that Ventas leases. As to the four medical office buildings in Kansas City, Ventas itself does not manage these properties; rather, they are managed by employees of a REIT affiliate.

Ventas's income on the whole is rents (80% of which is from net leases), capital gains, dividends, and interest. As a REIT, Ventas's income is generated by real estate that Ventas owns as investments, including four real estate investment assets located in Kansas City.

In *State ex rel. Agard v. Riederer*, 448 S.W.2d 577, 581 (Mo. banc 1969), the Missouri Supreme Court addressed whether "Kansas City [could] levy an income tax on the net profits (regardless of the source) of associations, businesses or other activities conducted by residents." The Court concluded that the clear legislative intent was "to limit the taxing power delegated to a tax on earnings irrespective of whether the recipient be an individual, unincorporated group or a corporation." *Id.* The Court acknowledged

that "it is difficult, in certain instances, to distinguish between 'earned' income and 'unearned' income," stating that unearned income "may become earned income if received for work done, services performed or rendered, or business or other activities conducted by the taxpayer." *Id.* at 582. The Court concluded that, "[s]uch a determination can be resolved only after consideration is given to all available facts and information pertinent to the particular individual taxpayer." *Id.*

The question in *Bachman v. City of St. Louis*, 868 S.W.2d 199, 201 (Mo. App. 1994), was whether the taxpayer was in the real estate business, or whether rental of inherited and purchased property rose to the level of business activities within the meaning of the St. Louis earnings tax ordinance. The court concluded that there was no evidence the taxpayer was engaged in a real estate leasing business. *Id.* at 202. The evidence showed that the property plaintiffs acquired by inheritance and purchase was rented to family-owned businesses, and acquired in furtherance of their family-owned machine company operations. *Id.* As such, the property owners were not required to pay earnings taxes on the net profits they received from rents paid on that property as it was not deemed "earned" income subject to taxation. *Id.* at 203.

Here, Ventas does not dispute that it is a business that owns and rents various Kansas City properties that generate gross receipts in the City.[3] The parties stipulated that Ventas's income is generated by real estate that Ventas owns as investments,

---

[3]The parties stipulated that Ventas is a Delaware corporation with its principal place of business in Louisville, Kentucky.

including four real estate investment assets located in Kansas City. Further, that rents, capital gains, dividends, and interest from its four medical office buildings in Kansas City comprise the entirety of Ventas's locally sourced income. Ventas argues, however, that "Ventas is not in the real estate business, but rather Ventas is a REIT that invests in real estate and generates income from its investments."

It is clear from the record that the business Ventas operates in Kansas City is a real estate business. While Ventas may choose to structure its business to meet REIT's qualification criteria for tax purposes, a failure to meet REIT criteria would not divest Ventas of title to its real estate, or cause the rent from that real estate to no longer be collectible. An election by a business to be treated as a REIT for federal tax purposes may be revoked or terminated, and may never come to fruition if REIT qualifications are unmet. Without REIT status, Ventas would still be a business with income generated by real estate that Ventas owns as investments.[4]

---

[4]"Section 92.130 is an exemption statute which lists the entities which are not subject to an earnings tax. The language of this exemption statute presupposes that income must first be taxable under § 92.110 before it is necessary to consider whether or not the income is exempt under § 92.130." *Bachman v. City of St. Louis*, 868 S.W.2d 199, 202-203 (Mo. App. 1994). The City has incorporated the Section 92.130 exemptions into its Code at Sec. 68-385(a).

Section 92.130.1(12) exempts a "Corporation or association organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by chapter 143." This exemption would be superfluous if *all* corporations holding title to property and collecting income therefrom were exempt from the earnings tax.

The circuit court did not misinterpret Kansas City Regulation 1.382(e)(4) in concluding that rental income from Ventas's Kansas City REIT properties is a business activity generating earned income and subject to the Kansas City earnings tax.

Point I is denied.

**Point II – Dividend Tax Deductions**

In its second point on appeal, Ventas contends the circuit court erred in interpreting Kansas City Ordinance § 68-381 to conclude that Ventas's federally required dividend paid deductions are not deductible expenses in calculating Kansas City earnings tax. Ventas argues that a proper interpretation and application of Kansas City Ordinance § 68-381 and Kansas City Regulation 1.382(e)(5) shows that Ventas's federally required dividends paid deductions are necessary expenses of Ventas's operation as a REIT and thus properly deductible in calculating Kansas City earnings and profits tax.

Under the City's regulations, "Only the necessary expenses of operation shall be deducted to determine the net profits subject to the earnings tax. Deductions allowed for determining federal taxable income shall not be used to calculate net profits for purposes of the earnings tax unless those federal tax deductions are necessary expenses of operation." Reg. § 1.382(e)(5); *see also* § 92.150, RSMo ("The net profits or earnings of associations, businesses or other activities, and corporations shall be ascertained and determined by deducting the necessary expenses of operation from the gross profits or earnings."); Kansas City Ordinance § 68-381 ("Net profits shall be determined by deducting the necessary expenses of operation from the gross profits or earnings.")

11

To maintain its status as a REIT, Ventas is required by federal law to pay at least 90% of its taxable income as dividends to distribute its real estate investment income. Ventas applies the federal dividends paid deduction against its federal taxable income, resulting in its federal taxable net income being zero (or close to zero) under 26 U.S.C. § 857(a)(1).

Under 26 USC § 856(a)(3), a REIT is a corporation, trust, or association that, but for REIT qualification and compliance, "would be taxable as a domestic corporation." Under 26 USC § 857, the tax deduction for dividends applies only if, among other things, the deduction for dividends paid during the taxable year equals or exceeds 90% of the REIT taxable income for the taxable year.

Ventas is a business entity that structures itself to qualify as a REIT for federal taxation purposes. Ventas does not generate its gross profits at the four medical buildings in Kansas City from being a REIT, but from the rental income of its real estate business. The 90% dividend payment requirement is to maintain REIT status. It is not an expense necessary to operate the real estate business and generate the taxable income which is converted to dividends and paid out to investors.

The circuit court did not err in interpreting Kansas City Ordinance § 68-381 to conclude that Ventas's federally required REIT dividend paid deductions are not deductible expenses in calculating Kansas City earnings tax.

Point II is denied.

12

**Point III – Interest and Penalties**

In its third point on appeal, Ventas contends the circuit court erred in upholding the assessed interest and penalties, arguing the assessed interest and penalties must be canceled and refunded because no tax is due or, alternatively, because there is reasonable cause for penalty abatement. We affirm the circuit court's ruling regarding interest, but reverse and remand the court's ruling as to penalties.

*Background*

Ventas timely filed its Form RD-108 profits return with the City for the 2017 tax year on October 11, 2018, showing an overpayment of $14,796.00 and requesting a refund. Over four years later, on January 13, 2023, Ventas received the City's response, a "Notice of Incomplete Return, Profits Tax Refund Request." The notice stated that the City was in receipt of Ventas's 2017 profits tax refund request, and in order to process the claim, additional information was needed. The notice stated that the tax return appeared to include a deduction for dividends paid to partners/owners, which was disallowed under Regulation §1.382(e)(5)(G), as "expenses that are for the benefit of the owners of the company are not considered necessary business expenses and are therefore not deductible." The notice asked Ventas to provide a description of the nature of the "Dividends paid deduction" shown on the return if it was not for the benefit of the owners.

Ventas responded on February 3, 2023, that it was Ventas's position that its rent, capital gains, dividends, and interest income are unearned income and not otherwise

13

earned from activity conducted by Ventas in Kansas City. Therefore, it is not subject to the Kansas City Earnings tax. Further, to the extent the income could be considered "earned," as a REIT, the dividends paid deduction is a necessary expense to the operations of Ventas as a REIT and must be considered in calculating Ventas's earnings for earnings tax purposes. Within that response, Ventas cited case law for its position as well as various City ordinances and regulations, including Regulation § 1.382(3)(4) which states, in part, that, "Net profits from interest, dividends, rent or royalties shall generally be treated as unearned."

That same day, on February 3, 2023, Ventas received a "Notice of Assessment" for the Tax Periods. The Notice stated that, based on information provided by Ventas, the rent income earned by the corporation was received for business activities conducted by the company; the Commissioner determined the income to be "earned" as allowed under the Code of Ordinances and Regulations. The Notice stated that Ventas's returns for the Tax Periods had been adjusted to disallow deductions the City determined were not allowed as business expenses. The dividends paid deduction for each return was removed, and the net profit was adjusted accordingly. The "Notice of Assessment" further stated that, if the taxpayer was in disagreement "with the tax liabilities calculated for any reason…you may dispute this notice within 30 days of the assessment date by providing a full written explanation of your differences and documentation to support your position."

14

On March 1, 2023, Ventas submitted to the City a "Notice of Protest and Dispute of Proposed Assessment" and requested a hearing. Ventas argued its previous positions and additionally stated that, assuming a penalty could be assessed, there was "reasonable cause" to abate the penalty.

On March 20, 2023, the City sent Ventas notice that its letter had been received, reviewed by the Commissioner, and that "the tax assessment issued has not been changed." The correspondence stated that Ventas had been "assessed the tax due and any penalty and interest due in accordance with the City Code of Ordinances and the Earnings and Profits Tax regulations."

On March 21, 2023, the City issued Ventas a "Statement of Collection" which detailed the $91,789.96 the City determined Ventas owed, which included additional interest from the February 3, 2023, Assessment Letter. $15,050.16 of the $91,789.96 was for penalties. The Statement included the same "HOW TO DISPUTE THE TAX AMOUNT" as was in the Notice of Assessment, which stated that, "If you disagree with the tax liabilities calculated for any reason…you may dispute this notice within 30 days of the assessment date by providing a full written explanation of your differences, and documentation to support your position."

On March 29, 2023, Ventas submitted payment under protest pursuant to Section 139.031 for the full amount assessed under the Statement of Collection. On May 26, 2023, Ventas filed a petition for recovery of the full amount paid under protest. In Count III of that petition, Ventas alleged that under Kansas City Ordinance § 68-395(8) the

15

City's director of finance was authorized to waive all or any portion of the penalties if the nonpayment was due to reasonable cause, there was reasonable cause to abate the penalties, and the City Ordinances support Ventas's position such that Ventas's failure to pay was not wanton or unreasonable. Further, Ventas consistently took the position on its City tax returns that no tax was due, which the City accepted, so Ventas reasonably believed its position was accepted until it received the Notice of Assessment.

Ventas made the same arguments as to the penalties in its motion for summary judgment. The City responded that Ventas's argument was "fallacious" because the City imposes mandatory penalties and interest in line with a taxpayer's failure to remit at the time of the return. Further, the fact "the City did not audit or discover Ventas's insufficient returns until 2023 (within the statutory period for assessment) is irrelevant in deciding whether to abate Ventas's tax penalty. See Code § 68-390(1)[.]" The director may only waive penalties in light of special circumstances, and "disagreements about the nature of taxable earnings and deductibility of dividends paid do not establish special or extenuating circumstances to abate the assessed penalties."

In ruling on the parties' competing motions for summary judgment, the circuit court found the City's "assessment for unpaid taxes, interest and penalties against [Ventas] is upheld."

*Analysis*

As Ventas only argues that the court erred in awarding interest if no tax is due, and we find that Ventas owed the assessed taxes, we affirm the circuit court's ruling that

16

Ventas owes the interest accrued under Ordinance 68-394(a) on the unpaid taxes. As to penalties, Section 68-394(a) states:

> All taxes imposed by this article and remaining unpaid after they have become due shall be subject to a penalty of five percent per month from the date payment was due up to a maximum of 25 percent, plus interest at the rate of 12 percent per annum from the due date to date of payment.

Section 68-395(8) provides:

> *Waive penalties*. The director may waive all or any portion of penalties imposed under this article as a result of nonpayment of tax where the taxpayer shows the nonpayment was due to reasonable cause. This authority may be exercised solely at the discretion of the director under special circumstances. The director may also waive penalties under this article by entering into voluntary disclosure agreements with taxpayers under criteria established by the director. This authority shall in no way be construed so as to authorize the waiver of interest by the director.

We discussed in *City of Kansas City, Missouri v. Garnett*, 482 S.W.3d 829, 832 (Mo. App. 2016), that this ordinance includes "language that expresses the City Council's intent that imposition of this penalty be discretionary." As such, although the City in *Garnett* argued that penalties were mandatory pursuant to Section 68-394(a), we upheld the circuit court's waiver of penalties in that case upon finding the taxpayer's failure to pay was not unreasonable under Section 68-395(8). *Id.*

The summary judgment record is unclear as to whether the director of finance considered waiving penalties here. The City argues that the director may only waive penalties in special circumstances, and "no additional facts in the record suggest that Ventas experienced any special circumstances entitling it to waiver." Ventas disagrees

17

and argues that both special circumstances and reasonable cause exist. "Special circumstances" for nonpayment and "reasonable cause" for nonpayment are inherently fact-based inquiries. This disagreement alone evidences material facts in dispute as to the issue of penalties.[5]

Viewing the record in the light most favorable to Ventas, Ventas always maintained that Regulation § 1.382(e)(4), which states that "net profits from interest, dividends, rent or royalties shall generally be treated as unearned…," justified its nonpayment of the earnings tax. A reasonable factfinder could conclude that this regulation gave Ventas reasonable cause to believe that rents collected on its REIT properties were not subject to the tax. The Regulation goes on to state that, if after review of the facts the Commissioner finds the rents were received for business or other activities conducted by the taxpayer, the Commissioner may determine that the net profits derived therefrom were earned. *Id*. Where an ultimate determination as to the taxation of

---

[5]The City argues for the first time on appeal that, even if special circumstances exist, the director had sole discretion to apply a waiver. In the summary judgment filings, the City simply argued that Ventas presented no special circumstances for waiver. As this new argument was not presented to the trial court, we will not consider it. *Osage Mobile Home Park, LLC v. Jones*, 571 S.W.3d 623, 624 (Mo. App. 2019). Similarly, the City contends that Ventas's reliance on *Garnett* (in arguing the City may waive penalties for reasonable cause) is misplaced because *Garnett* was decided prior to amendment of § 68-395(8), and the amendment added language requiring the director of finance to use discretion only under special circumstances. The contents of municipal ordinances may not be judicially noted. *City of Kansas City v. Powell*, 451 S.W.3d 724, 740 n.15 (Mo. App. 2014). The prior ordinance was not included in the summary judgment record (or on appeal) for comparison, which precludes our review of this argument. Nevertheless, while the City focuses only on the "special circumstances" language of § 68-395(8), we presume the City Council was aware of *Garnett* when revising § 68-395(8). As the waiver of penalties for reasonable cause provision remains in the ordinance, without more, we cannot dismiss *Garnett* as wholly inapplicable.

18

interest, dividends, rents or royalties is contingent upon the Commissioner's review of the facts, a reasonable fact-finder could conclude that the Commissioner's four-year delay in reviewing the facts (after Ventas clearly took the position that no taxes were due and a refund was requested in 2017) could provide reasonable cause or special circumstances to warrant waiver of penalties.[6]

Moreover, the record reveals material facts in dispute as to whether Ventas had reasonable cause to conclude that income received from rental of its Kansas City REIT properties was "earned" income, whether Ventas had reasonable cause to believe the federal dividends deduction was deductible under the Kansas City earnings tax, whether Ventas had reasonable cause to believe the City accepted its tax position, and whether special circumstances caused Ventas's failure to pay the proper amount of tax due. As such, the circuit court erred in granting summary judgment in the City's favor on the issue of penalties.

Point III is denied as to the issue of interest, but granted as to the issue of penalties.

---

[6]The City argues Ventas could have had no expectation of an earlier audit because the audit occurred within the statute of limitations per Section 68-390(1). Section 68-390(1), titled "Limitations," states that, "No assessments shall be made…[o]f any tax found to be due after five years from the due date of the return." While this ordinance speaks to the date after which a taxpayer can expect to be free from audit, it does not speak to when a taxpayer might reasonably expect to have a timely filing reviewed, or whether the taxpayer can expect to accrue penalties if they can prove reasonable cause to believe no tax was due or special circumstances for failure to pay.

19

## Conclusion

We conclude that the circuit court did not misinterpret Kansas City Regulation 1.382(e)(4) when it concluded that rental income from Ventas's Kansas City REIT properties is a business activity generating earned income and subject to the Kansas City earnings tax. Further, the circuit court did not err in interpreting Kansas City Ordinance § 68-381 to conclude that Ventas's federally required REIT dividend paid deductions are not deductible expenses in calculating Kansas City earnings tax. The circuit court erred, however, in granting summary judgment to the City on the issue of assessed penalties, as material facts remain in dispute as to whether there is reasonable cause and special circumstances for penalty waiver.

The circuit court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
Anthony Rex Gabbert
Chief Judge

All concur.

20